**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2001**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GABRIEL RODRIGUEZ-AGUIRRE,
also known as Cuco Aguirre, also
known as George Aguirre, also known
as Gabriel Aguirre, also known as
Gabriel Rodriguez, also known as
Refugio Rodriguez; ELENO
AGUIRRE; DOLORES CONTRERAS;
TONY BENCOMO,

      Defendants-Appellants.

No. 00-2337

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-92-486-JC)**

---

Stephen R. Kotz, Assistant United States Attorney (Norman C. Bay, United States
Attorney, District of New Mexico, with him on the brief), Albuquerque, New
Mexico, for Plaintiff-Appellee.

Brenda G. Grantland, Mill Valley, California, for Defendants-Appellants.

---

Before **EBEL** and **HOLLOWAY**, Circuit Judges, and **JONES**,[*] Senior Circuit Judge.

_____

**EBEL**, Circuit Judge.

_____

Appellants Gabriel Rodriguez-Aguirre, Eleno Aguirre, Doloras Contreras and Tony Bancomo appeal from the district court's denial of their Rule 41(e) motion for the return of property. The property in question was allegedly seized in 1992 pursuant to several warrants executed on homes and business properties owned by Appellants. While many of the seized items were forfeited by the United States in valid civil forfeiture actions, Appellants allege that approximately 127 of the seized items were never properly forfeited and thus should be returned to Appellants. The magistrate judge assigned to the case recommended denying Appellants' motion based on lack of standing and laches, and Appellants' objections to the magistrate's recommendations were rejected by the district court when dismissing Appellants' motion.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we hold that Appellants have established standing to pursue their Rule 41(e) motion. We further find that the district court erred in applying the doctrine of laches without requiring Plaintiff-Appellee, the United States, to demonstrate material prejudice.

_____

[*] The Honorable Nathaniel R. Jones, Senior Circuit Judge, Sixth Circuit Court of Appeals, sitting by designation.

Finally, we hold that the six-year statute of limitations set forth at 28 U.S.C. § 2401(a) applies to the bringing of a Rule 41(e) motion. In cases where the government has effected an administrative forfeiture of property, a Rule 41(e) claimant's cause of action alleging unconstitutional lack of notice of the forfeiture accrues when he or she discovers or should have discovered that the property was forfeited. In cases where there has been no forfeiture action brought against property that has been seized in conjunction with a criminal proceeding, a Rule 41(e) claimant's cause of action does not accrue until the government no longer has the right to keep the seized items as evidence in the criminal proceeding. Because we cannot determine which accrual date applies in this case, we REVERSE and REMAND this case to the district court for further proceedings, including a determination of the timeliness of Appellants' motion.

## BACKGROUND

On April 20, 2000, Appellants Gabriel Rodriguez-Aguirre, Eleno Aguirre, Doloras Contreras and Tony Bancomo filed a motion for the return of property pursuant to Rule 41(e) following their convictions on multiple counts of drug, money laundering and related offenses. Appellants' convictions were entered on December 15, 1994. All but Bancomo appealed their convictions, and each Appellant's conviction was upheld on appeal in 1997. See United States v.

Rodriguez-Aguirre, 108 F.3d 1228 (10th Cir. 1997); United States v. Aguirre, 108 F.3d 1284 (10th Cir. 1997); United States v. Contreras, 108 F.3d 1255 (10th Cir. 1997).[1]

The property in question was seized by federal agents pursuant to warrants issued in 1992, which allowed the agents to seize fifty-one parcels of real property as well as the contents of those properties. The agents executing the warrants also seized, among other things, race horses, vehicles, cash, personal property and a life insurance policy. Over the course of the next five years, the United States initiated a total of three civil forfeiture proceedings against the seized properties, all of which resulted in judgments of forfeiture. See United States v. Fifty-One Items of Real Property, CIV 92-1155-JC (D.N.M. Dec. 22, 1993); United States v. Item One: Approximately 247 Horses, CIV-93-102 JC (D.N.M. Jun. 29, 1994); United States v. Eighty Acres, CIV-95-0981-JC (D.N.M. Aug. 8, 1997).

Appellants do not challenge the judgments of forfeiture in those cases. In their Rule 41(e) motion, however, Appellants argue that the itemized returns on the search warrants reveal 127 seized items that appear never to have been validly

_____

[1] Two Appellants, Rodriguez-Aguirre and Aguirre, have appeals of their petitions for a writ of habeas corpus pending before the Tenth Circuit. See United States v. Rodriguez-Aguirre, No. 00-2382; United States v. Aguirre, No. 00-2384.

forfeited by the United States in any of those three civil forfeiture proceedings or in any administrative forfeiture proceeding.

Rule 41(e) of the Federal Rules of Criminal Procedure states:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

Fed. R. Crim. P. 41(e). Appellants do not contend that the 127 listed items of personal property were taken from them pursuant to an unlawful search and seizure. Instead, Appellants argue that they have been wrongfully "depriv[ed]" of their property and are "entitled to lawful possession of the property." Specifically, Appellants assert that those 127 items do not appear on any of the lists of forfeited property related to the three civil forfeiture actions undertaken by the United States between 1992 and 1997. Further, they argue that neither they nor any member of their families ever received notice of an administrative forfeiture relating to those 127 items, and thus that none of those items "could . . . have been forfeited in compliance with the notice requirements of the Due Process Clause." Appellants' claim for relief under Rule 41(e) is therefore two-

-5-

fold. They argue, first, that if any of the 127 items were not actually forfeited by the United States in any of the three civil forfeiture proceedings, then Appellants retain an ownership or possessory interest in those items and the items should therefore be returned. Second, and in the alternative, Appellants argue that if any of the 127 items were administratively forfeited, then Appellants never received adequate notice of the pending forfeiture and thus the forfeiture of those items is void.

Appellants' Rule 41(e) motion included a declaration from Rodriguez-Aguirre[2] which listed the 127 items[3] he believed had never been properly forfeited by the United States and which stated that each piece of property was owned by

---

[2] Rodriguez-Aguirre asserts that he included a declaration in support of the Rule 41(e) motion "because the prosecutors in this case have repeatedly 'warned' [his attorney] that she could be held in contempt if she filed a motion for return of property on behalf of the Aguirres, citing the February 25, 1999 order from Judge Black in the related forfeiture case [Fifty-One Items]." Judge Black entered an order in Fifty One Items after receiving filings seeking to vacate those forfeitures from two fugitives in the criminal case, because he concluded that the filing of additional pleadings in that case "gave rise to a substantial danger of fraud being perpetrated on the Court." In that order, Judge Black directed that no further pleadings would be accepted in regard to the forfeiture proceeding without prior approval by the court and without the service of an attorney licensed to practice in the State of New Mexico.

[3] The list included items ranging from $3,233,000 in United States currency, portable buildings, personal clothing (e.g., 12 leather jackets seized from storage (valued at $14,000) and 30 Italian wool suits seized from storage (valued at $56,000)), custom pool equipment, bricks, exercise equipment, vehicles and mobile homes.

"either [him] or [his] relatives."[4] He also stated that he had personally owned, leased or possessed thirty-two of the fifty-one seized properties, and "most of the personal property" seized from them, listed in the first forfeiture action initiated by the United States. The other Appellants did not include declarations with the Rule 41(e) motion but assert on appeal that they "have always intended to submit declarations, live testimony, and other evidence of ownership when the case gets beyond the pleading stage and into the proof stage."

---

[4] Appellants were not only partners in the drug cartel, but are relatives, as well. Cf. Rodriguez-Aguirre, 108 F.3d at 1230 ("Mr. Aguirre managed a family-run organization ('the Aguirre organization') specializing in the sale and distribution of large amounts of marijuana and cocaine.") Eleno Aguirre is Rodriguez-Aguirre's brother. See Aguirre, 108 F.3d at 1285. Doloras Contreras is Rodriguez-Aguirre's daughter. See Contreras, 108 F.3d at 1258. The record does not explain Bancomo's relationship to Rodriguez-Aguirre, but we know the two men are related, see Rodriguez-Aguirre, 108 F.3d at 1234, and Appellants' counsel states in her reply brief to this court that Bancomo is Rodriguez-Aguirre's nephew.

At least some of Rodriguez-Aguirre's relatives who were associated with the drug cartel are not parties to the instant Rule 41(e) motion. See, e.g., Rodriguez-Aguirre, 108 F.3d at 1234 ("With the exception of defendant Sonia Gallegos, all of the [nine] defendants were relatives."). And at least some of the property seized pursuant to the 1992 search warrants appears to have belonged to identified individuals who were relatives of Rodriguez-Aguirre but who are not parties to this action. See Aguirre, 108 F.3d at 1235 (noting that the agents seized "two certificates of title for trailers owned by Raul Hernandez"). Although it is impossible to know at this point in the litigation whether Appellants will attempt to assert an interest in that property, as well, we interpret Rodriguez-Aguirre's declaration to assert an ownership or possessory interest only in the property seized from these four Appellants and not from any other relative of Rodriguez-Aguirre. See discussion infra pp. 14-15.

At the time Appellants filed their Rule 41(e) motion, the statute of limitations had run on the United States' ability to commence forfeiture proceedings against seized property that had not already been subject to forfeiture proceedings initiated by the United States.  See 19 U.S.C. § 1621 ("No suit or action to recover . . . any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered . . . .").

The United States filed a motion to dismiss Appellants' Rule 41(e) motion, arguing: "(1) the applicable statute of limitations barred the Rule 41(e) motion; (2) defendants lacked Article III standing to assert a claim to the alleged property; and (3) the equitable doctrine of laches barred the motion."[5]

The magistrate judge assigned to the case recommended denying Appellants' motion on July 20, 1997, based upon lack of standing and the equitable doctrine of laches.  In regard to the issue of standing, the magistrate concluded that because "[b]oth an allegation of ownership and some evidence of ownership are required to establish standing to contest a civil forfeiture," Appellants' "unsupported declaration that either [Rodriguez-Aguirre] or his

_____

[5]  Although the motion to dismiss did not specify the Rule of Civil Procedure under which dismissal was sought, we assume it was Rule 12(b)(1) regarding the standing argument and Rule 12(b)(6) regarding the laches and statute of limitations arguments.

relatives own the property" was "insufficient to confer standing to assert a claim for the property." In regard to the United States' laches argument, the magistrate found that Appellants' delay in filing the Rule 41(e) motion was not excused by the protracted litigation in which they had been engaged or by the amount of property that had been seized, and thus that Appellants' motion "should be denied based on the equitable doctrine of laches." The magistrate made no finding regarding whether the United States was materially prejudiced by Appellants' delay in filing the Rule 41(e) motion.

Appellants' objections to the magistrate's recommendations were rejected by the district court on August 17, 2000, at which time the district court adopted the magistrate's recommendations and dismissed Appellants' Rule 41(e) motion. This appeal followed.

## DISCUSSION

A. Standard of Review

The district court's decision that Appellants lacked standing to bring their Rule 41(e) motion is reviewed de novo. See Utah v. Babbitt, 137 F.3d 1193, 1203 (10th Cir. 1998). The district court order dismissing the motion on the basis of laches is also reviewed de novo, cf. Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th

Cir. 1997), as is the question of whether a statute of limitations bars the motion. See Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1304 (10th Cir. 2000).

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. See Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. See id. In addressing a facial attack, the district court must accept the allegations in the complaint as true. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." Id. at 1003. In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Id. Because we construe the United States' Rule 12(b)(1) motion to dismiss for lack of standing to be a facial attack on the complaint, rather than a factual one, we accept Appellants' allegations of material facts as true and construe the complaint in favor of Appellants. See Riggs v. City of Albuquerque, 916 F.2d 582, 584 (10th Cir. 1990). The same standard applies to the United States' Rule 12(b)(6) motion to dismiss based upon the doctrine of laches and the

statute of limitations. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

B. Analysis

1) Standing

The magistrate found that Appellants had not established standing to bring this Rule 41(e) motion because they offered "only a list of vaguely described property," and "[a] conclusory allegation of ownership in vaguely described property is insufficient to confer standing to assert a claim for the property." Appellants argue that the magistrate erred in its standing determination because it misapprehended the Tenth Circuit test for standing, and required detailed proof of ownership at a time in the proceedings when it is not required. In response, the United States argues that Appellants have presented only an "unsupported declaration in which Gabriel Aguirre broadly proclaims that a laundry list of property was seized and that the property was owned by either him or his relatives," which is insufficient to establish a "facially colorable interest" in the Rule 41(e) proceedings, as required by Article III to establish standing.

The Tenth Circuit has interpreted the constitutional and prudential requirements for standing in the following manner:

> [T]he term 'standing' subsumes a blend of constitutional requirements and prudential considerations. Article III of the

Constitution requires a plaintiff to show: (1) he or she has personally suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. Beyond the constitutional requirements, a plaintiff must also satisfy the following set of prudential principles: (1) the plaintiff generally must assert his or her own legal rights; (2) the court must refrain from adjudicating 'generalized grievances' most appropriately addressed by one of the other branches of government; and (3) the plaintiff's complaint must fall within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question.

Mount Evans Co. v. Madigan, 14 F.3d 1444, 1450-51 (10th Cir. 1994) (citations and quotations omitted).

Finally, at the preliminary juncture in a case at which standing is typically assessed, "the claimant need not prove the full merits of her underlying claim. All that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." United States v. 116 Emerson Street, 942 F.2d 74, 78 (1st Cir. 1991) (citations and quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations and internal quotations omitted) (alteration in original).

In a Rule 41(e) proceeding, a claimant must allege "a colorable ownership, possessory or security interest in at least a portion of the defendant property" to satisfy the standing requirements. United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497 (6th Cir. 1998). When the claimant alleges such an interest in the seized property, the standing requirements are satisfied "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." Id.

Reviewing Appellants' allegations of standing under the traditional standing analysis, we find they have asserted facts sufficient to establish standing to pursue this Rule 41(e) motion.

In regard to the constitutional standing requirements, Appellants have alleged that they each have suffered an "injury in fact" caused by the defendants, due to either: (1) the United States' retention of seized property without commencing valid civil forfeiture proceedings against it, or (2) in the alternative, the United States' administrative forfeiture of the seized property without appropriate notice. The return of the property, or its monetary equivalent, pursuant to Rule 41(e) would redress Appellants' grievances. See Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1158 (2d Cir. 1994) ("[The claimant] clearly asserts a distinct and palpable injury – the loss of $30,000 through an allegedly unlawful forfeiture – that is the direct result of putatively illegal

governmental action, and the injury would be redressed by a successful challenge to the forfeiture.") (quotations and citations omitted).

Similarly, Appellants have alleged sufficient facts to satisfy the prudential requirements for standing. First, each of the four Appellants is asserting his or her own legal rights, stating, "Defendants contend that there was a large amount of personal property seized from them, and which appeared on itemized returns on the search warrants, which were never named or forfeited in these three civil forfeiture actions." The next sentence reads: "A list of this property is attached as Appendix A to this motion." (Id. (emphasis added).) We assume the phrase "this property" in the second sentence refers to the "large amount of personal property seized from them," meaning these Appellants. We find these allegations of an ownership or lawful possessory interest in the seized items is sufficient to establish that Appellants are asserting their own rights, as opposed to the rights of others.[6]

In concluding that Appellants are asserting their own rights rather than the rights of third parties, we also rely upon Rodriguez-Aguirre's declaration

---

[6] In addition, we note that some, if not all, of the property seized pursuant to the 1992 warrants was forfeited by the government in three separate civil forfeiture proceedings based upon the government's argument that Appellants (and their co-defendants) owned or possessed the property and used it in furtherance of the charged drug conspiracy. Given that fact, we think it slightly disingenuous for the United States to now argue that Appellants have not shown a colorable interest in other property seized pursuant to those same warrants.

explaining his connection to the property. Rodriguez-Aguirre stated that he owned, leased or possessed thirty-two of the fifty-one seized real properties at issue in the first forfeiture action, Fifty-One Items, and it appears that the 127 items of personal property at issue in this case were seized from those real properties. Rodriguez-Aguirre also states, just prior to setting forth the list of 127 items of personal property, "I have reviewed the complaints in each [of the three civil forfeiture actions] . . . and find no orders forfeiting any of the following personal property which either I or my relatives own." The United States correctly notes that Rodriguez-Aguirre does not specify which of his relatives owns what property, and that the phrase "my relatives" conceivably could refer to relatives of Rodriguez-Aguirre who are not parties to the Rule 41(e) motion. We nonetheless find that, when reading the sentence in context of the entire motion and keeping in mind our duty to construe the complaint in favor of Appellants, see Riggs, 916 F.2d at 584, Rodriguez-Aguirre was asserting in his declaration that the 127 listed items were owned either by him or by one of the three relatives who are parties to this action. Finally, Rodriguez-Aguirre states that the storage area from which much of the personal property was apparently seized "belonged to us," which we similarly interpret to mean that the storage area was owned or leased by Rodriguez-Aguirre and the three other named Appellants.

-15-

Based on these allegations, we find that Appellants have asserted a colorable ownership or lawful possessory interest in at least some of the 127 items of property listed in Rodriguez-Aguirre's declaration and are thus asserting their own rights rather than the rights of third parties in filing this Rule 41(e) motion.[7]

Some courts have suggested in the Rule 41(e) context that both "an allegation of ownership <u>and some evidence of ownership</u> are together sufficient to establish standing to contest a civil forfeiture." <u>See, e.g.</u>, <u>Torres</u>, 25 F.3d at 1158 (emphasis added). We find these cases unavailing. First, Rule 41(e) requires that the claimant be "entitled to lawful <u>possession</u> of the property," not that the claimant prove lawful <u>ownership</u> of the property. Requiring proof of <u>ownership</u>,

_____

[7] We acknowledge the United States' twin concerns that some of the listed property may be inadequately described or might have belonged to a third party who is not a party to this litigation. We nevertheless find that those concerns are not dispositive of the standing inquiry. Appellants have alleged a colorable interest in at least some of the listed property and thus are asserting their own right to have that property returned. Whether some of the listed property does not, in fact, belong to Appellants is a matter better dealt with on summary judgment or at trial. Similarly, whether any of the 127 listed items were actually forfeited in one of the three civil forfeiture proceedings is not an issue this court can resolve at the motion to dismiss stage, particularly because the judgments of forfeiture and the documents underlying them are not all included in the record. In any event, Appellants have explicitly stated that if any of these items were forfeited in any of the three civil forfeiture proceedings, they "will withdraw their request for return of those items." Finally, whether some of the items are described in a manner that makes it impossible to verify either their existence or their seizure by the United States is simply not an issue to be resolved as a matter of standing.

-16-

as opposed to lawful possession, is therefore not required under the Rule, even at a later stage in the proceedings such as summary judgment or trial. Second, at this stage in the proceedings we are concerned only with the allegations contained in Appellants' complaint and not with actual evidence because we are reviewing a motion to dismiss that was granted by the district court. Requiring evidence of ownership, as opposed to allegations of ownership, is antithetical to the standards for reviewing 12(b)(1) motions to dismiss for lack of facial standing. Cf. Riggs, 916 F.2d at 584 (stating that we accept the plaintiff's allegations as true and construe the complaint in the plaintiff's favor when reviewing a 12(b)(1) motion). Third, this is not a case where the claimant has acknowledged that he does not own the property but nonetheless seeks its return, see Mercado v. United States Customs Service, 873 F.2d 641 (2d Cir. 1989) (where the claimant asserted that an unidentified third party owned the seized property but that he had a lawful possessory interest in it, and the district court requested evidence of ownership before deciding to grant summary judgment against the claimant), nor is it a case where evidence indicates that the claimant is asserting an ownership interest in property that at first glance appears to belong entirely to someone else, see Torres, 25 F.3d at 1156 (where the claimant asserted an ownership interest in a forfeited certificate of deposit issued in the name of her husband only). To the contrary, this is a case where the claimants are asserting an ownership or lawful

possessory interest in personal property that was seized from real property owned by them, and where there is nothing to indicate that the requested property actually belongs to third parties who are not parties to the Rule 41(e) motion. Under these circumstances, we find that Appellants' allegations of ownership, without the addition of outside evidence of ownership, are sufficient to establish standing. Cf. United States v. Maez, 915 F.2d 1466, 1468 (10th Cir. 1990) ("[T]he seizure of property from someone is prima facie evidence of that person's entitlement, particularly when the seized property is money.").

Lastly, this is a specific grievance brought by Appellants in what appears to be the proper judicial forum, the judicial district in which the property was seized, and by the appropriate means, a Rule 41(e) motion for return of property. And there is no question that Appellants' claims fall within the "zone of interest" protected by Rule 41(e), as they deal squarely with "the deprivation of property" caused either by the United States' failure to return Appellants' property that was never forfeited or by the United States' unconstitutional forfeiture of Appellants' property without notice.

For the foregoing reasons, we conclude that Appellants have satisfied both the constitutional and prudential requirements for standing and therefore that the district court erred in dismissing Appellants' motion for lack of standing.

2) Doctrine of Laches

The magistrate found Appellants' Rule 41(e) motion barred by the doctrine of laches because Appellants did not bring their motion until approximately seven years after the property was seized, and because the extended criminal litigation in which Appellants had been involved during that time was no excuse for the late filing of Appellants' motion. The magistrate made no finding as to whether the United States was materially prejudiced by Appellants' delay. Appellants argue that the magistrate erred when it did not require the United States to demonstrate material prejudice from the delay. Appellants further argue that their delay in filing the Rule 41(e) motion should be excused given the extended criminal litigation related to the seized property, the amount of property involved in the three civil forfeiture proceedings, and the government's right to retain the property until the conclusion of the criminal prosecution. In response, the United States argues that, while the magistrate did not make a factual finding that "the government was materially prejudiced by [Appellants'] delay," the "prejudice to the government caused by a seven and one-half year delay was obvious." The United States adds: "Although proof of prejudice could have been more specific and the Magistrate could have articulated the prejudice prong of the laches doctrine, it is nonetheless apparent that the parties and the court would encounter

-19-

substantial gaps in both testimonial and documentary evidence due to [Appellants'] delay."  Finally, the United States argues that material prejudice is also established by the fact that Appellants waited to file their Rule 41(e) motion until after the United States' five-year statute of limitations on bringing a forfeiture action had run, and therefore Appellants' "motion was purposefully designed to prevent the government from pursuing judicial remedies that might otherwise be available."

As an initial matter, we note that the question of whether the doctrine of laches bars Appellants' motion is intimately bound up with the question of whether a statute of limitations applies to Rule 41(e) motions.  Because laches is a judicially created equitable doctrine, whereas statutes of limitations are legislative enactments, it has been observed that "[i]n deference to the doctrine of the separation of powers, the [Supreme] Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes." County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 262 n.12 (1985) (Stevens, J., dissenting in part) (relying generally on Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982)).  Accordingly, "[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period."  See Ikelionwu v. United States, 150 F.3d 233, 238 (2d Cir. 1998); see also Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789,

799 (4th Cir. 2001) ("When federal courts, in the exercise of their equitable power, consider laches, they are guided by the limitations period that they would borrow for actions at law and presume that if an equitable claim is brought within the limitations period, it will not be barred by laches."); Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 169 n.3 (8th Cir. 1995) ("But even when applying laches to an equitable claim, courts apply a presumption that the action is not barred if brought within the statute of limitations period for 'analogous' actions at law.").

Because we conclude that the six-year statute of limitations contained in 28 U.S.C. § 2401(a) applies to motions brought under Rule 41(e), any motion brought within that six-year period would generally not be barred by the doctrine of laches. Because we conclude that Appellants' motion is most likely not time-barred under § 2401(a), the Rule 41(e) motion would appear to be timely in regard to the equitable doctrine of laches, as well.

However, because it is possible, in rare cases, that a statute of limitations can be cut short by the doctrine of laches, see Armstrong v. Maple Leaf Apartments, Ltd., 622 F.2d 466, 472 (10th Cir. 1979) ("The court in the proper case applies laches although the period of time may be much shorter than provided in a statute.") (citing John Norton Pomeroy, Equity Jurisprudence

§ 419b, at 175 (5th ed. 1941)), we will briefly address the parties' laches arguments on their merits.

"Whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another." Hutchinson, 105 F.3d at 564. Thus, "[i]n order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by the delay." Id. (emphasis added).

We reject the United States' argument that material prejudice is "obvious" or "apparent" in this case. The United States argues that Appellants' delay in bringing the Rule 41(e) motion was prejudicial because: "Memories fade, forfeited property has been disposed of and retrieval of records will be unnecessarily difficult and potentially impossible in some instances if records have been destroyed." This conclusory allegation of prejudice is insufficient to establish material prejudice to the United States. The seizures occurred only nine years ago, and the forfeiture proceedings concluded only four years ago; given this timeline, we think the possibility of material prejudice arising from faded memories is far from "obvious." Further, the United States has an affirmative obligation to keep and maintain records of seized property, see 41 C.F.R. § 128-

-22-

50.101 (requiring federal agencies to keep "accurate and current" records of seized property, including its date of seizure, location and chain of custody), and consequently cannot blithely argue that "retrieval of records will be unnecessarily difficult and potentially impossible" as a means to demonstrate material prejudice. Finally, we reject the United States' argument that Appellants' delay in filing this Rule 41(e) motion until after the United States' statute of limitations had run constitutes a "purposeful plan to prevent a party from seeking redress in the courts [and] certainly constitutes material prejudice." As the Second Circuit has unequivocally stated:

> [W]e cannot agree . . . that the defendant was in some way estopped from making his Rule 41(e) motion by his having withheld it until the statute of limitations had run against the government. . . . The forfeiture statutes give the government vast and important powers, but they must be exercised in the precise manner the statutes provide. The statutes impose no duty on a defendant to prevent the government from losing its rights through carelessness.

United States v. Giovanelli, 998 F.2d 116, 119 (2d Cir. 1993) (citations omitted).[8]

For these reasons, we find that the United States has not established material prejudice due to Appellants' delay in filing their Rule 41(e) motion and

---

[8] See also United States v. Clymore, 245 F.3d 1195 (10th Cir. 2001) (holding that, if an adequate nexus can be established between the crime and the property being forfeited, the court may quiet title to property in favor of the government, even where the claimant has filed Rule 41(e) motion for return of property and the statute of limitations has run on the government's right to institute forfeiture proceedings on its own).

that the district court erred in dismissing Appellants' complaint absent such a showing.[9] At this stage of the proceedings, the United States has not demonstrated that this is one of the rare cases where the doctrine of laches may properly be invoked notwithstanding the applicability of a specific statute of limitations. We therefore find that the doctrine of laches may be inapplicable to this case in any event.

### 3) Statute of Limitations

As it did below, the United States argues that Appellants' Rule 41(e) motion was untimely because Rule 41(e) motions are governed by the generic statute of limitations for civil actions brought against the United States, see 28 U.S.C. § 2401(a), which requires that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The United States asserts that this limitations period starts running once the property is seized, which in this case was in 1992, and thus that Appellants' motion, which was filed on April 20, 2000, is time-barred. Neither the magistrate nor the district court addressed the United States'

_____

[9] Because we find that the district court erred in not requiring the United States to demonstrate material prejudice, we need not address Appellants' alternative argument regarding the doctrine of laches, i.e., that the magistrate clearly erred when it found Appellants' delay in filing the Rule 41(e) motion to be "unexplained, unjustified and inexcusable."

statute of limitations argument when dismissing Appellants' petition. Because we may affirm the district court "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court," United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994), however, we will address the United States' statute of limitations argument on its merits.

This circuit has not yet decided whether the timeliness of Rule 41(e) motions is governed by the statute of limitations set forth in § 2401(a). The Second, Fourth and Seventh Circuit Courts of Appeals have ruled on this issue,[10] and all three have concluded that the limitations period contained in § 2401(a) applies to Rule 41(e) motions for the return of property. See United States v. Duke, 229 F.3d 627, 629 (7th Cir. 2000); United States v. Minor, 228 F.3d 352, 359 (4th Cir. 2000); Polanco v. United States Drug Enforcement Admin., 158 F.3d 647, 653 (2d Cir. 1998). The Fourth Circuit in Minor explained its reliance on § 2401(a) as follows:

> [Section 2401(a)] is a catch-all provision; it establishes a general limitations period for civil lawsuits against the United States not otherwise covered by a more specific limitations period. Even if, as

_____

[10] The Fifth Circuit has assumed, but has not explicitly stated, that § 2401(a) applies to Rule 41(e) motions for the return of property. See Clymore v. United States, 217 F.3d 370, 373 (5th Cir. 2000) (stating "[t]he parties agree that in civil actions the statute of limitation for the return of property is supplied by 28 U.S.C. § 2401(a)").

here, no specific limitations period applies directly to the cause of action at issue, a federal court will first seek to "borrow" a limitations period applicable to a closely analogous federal or state action. [The claimant's] action, an equitable cause of action derived from the Constitution, "is not closely analogous to any statutory cause of action." Accordingly, we do not "borrow" a limitations period; rather we apply the six-year period prescribed by § 2401(a).

Minor, 228 F.3d at 359 (citations omitted).[11] We are persuaded by the reasoning of the Fourth Circuit in Minor, and we now join the Second, Fourth, and Seventh Circuits in holding that the bringing of Rule 41(e) motions is governed by the general statute of limitations set forth at 28 U.S.C. § 2401(a).

The more difficult question in this case, however, is not whether the § 2401(a) limitations period applies, but at what point that limitations period started running against Appellants.

The United States asks us to find that the limitations period began running at the time when the property was seized. Specifically, the United States argues: "The bottom line is that [Appellants] knew in October[] 1992 that the property they claim, if it exists, had been seized. Some reasonable statute of limitation must apply to their claims. In this case, six years from the date of seizure is more than reasonable and generous."

---

[11] The Minor court also noted: "[Section] 2401 governs actions brought under both the APA and the Tucker Act. Thus, even if it were appropriate to 'borrow' a limitations period from an analogous cause of action, a court might well look to § 2401." 228 F.3d at 359 n.6 (citations omitted).

As the Second Circuit stated when rejecting the same argument in <u>Polanco</u>: "The district court assumed that the cause of action accrued when the currency was seized . . . . But the specific constitutional violation alleged – the permanent deprivation of [the claimant's] property without notice – did not occur until sometime later, when the property was forfeited." 158 F.3d at 654 (citing <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.</u>, 522 U.S. 192, 195, 201 (1997) (stating that a cause of action accrues when the plaintiff has a "complete and present" cause of action and "can file suit and obtain relief") (citations and quotations omitted)). The Fourth Circuit has also rejected the United States' argument, stating, "We emphasize that the limitations period begins to run, not when the claimant is on reasonable notice of the government's <u>seizure</u> of the property, or even when reasonable inquiry would have led to notice of the government's <u>intention</u> to declare forfeiture, but when reasonable inquiry would have led to notice of the forfeiture declaration itself." <u>See</u> <u>Minor</u>, 228 F.3d at 359 (emphasis in original). We agree with this analysis, and thus decline the United States' invitation to set the beginning date of the limitations period at the date of seizure.

Instead, we adopt the Fourth Circuit's accrual date for Rule 41(e) motions for return of property: "The accrual date is the date on which [the claimant] was on reasonable inquiry notice about the forfeiture, i.e., the earlier of the following:

when he first became aware that the government had declared the currency forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture." Minor, 228 F.3d at 359. In cases where the Rule 41(e) claimant knows the property was administratively forfeited but asserts that he was not provided adequate notice of the forfeiture, a court should therefore measure the limitations period from the earliest of the following two dates: (1) the date on which the claimant discovered that the property was forfeited, or (2) the date on which the claimant could reasonably be expected to have made an inquiry that would have made him aware of the forfeiture.[12]

---

[12] We acknowledge the potential inconsistency of applying the limitations period set forth in § 2401 to cases involving administrative forfeitures effected after constitutionally inadequate notice, given that we have declared such forfeitures "void" due to the constitutional inadequacies. See Clymore v. United States, 164 F.3d 569, 574 (10th Cir. 1999). Although we have never addressed this question in the Rule 41(e) context, "void" judgments are generally open to challenge at any time. See VTA, Inc. v. Airco, Inc., 597 F.2d 220, 224-25 (10th Cir. 1979) (stating that Federal Rule of Civil Procedure 60(b)(4) motions to vacate void judgments may be brought at any time); United States v. One Color Toshiba Television, 213 F.3d 147, 157 (3d Cir. 2000) ("[N]early overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity . . . .") (finding that there is no time limit for filing a Rule 60(b) motion to vacate a void judicial forfeiture judgment). Of course, where there has been an administrative forfeiture, there has been no "judgment" that could be open to challenge in the federal courts pursuant to Rule 60(b)(4). See 19 U.S.C. § 1609 (stating that the appropriate customs officer "shall declare" property forfeited if the administrative forfeiture process goes unchallenged for the required length of time); 21 C.F.R. § 1316.77 (same process applies to DEA officers). Further, we agree with our sister circuits

However, this standard for measuring the accrual date in a Rule 41(e) cause of action applies only when there has been an actual administrative forfeiture of which the claimant is or should be aware. Here, Appellants argue alternatively the United States never forfeited the 127 items for which Appellants seek recovery; rather, it simply seized the 127 items and refused to return them. Appellants claim not to know of any administrative forfeiture proceedings that may have been brought against the property, and the United States has declined to advise us whether such administrative proceedings ever occurred. At this point in the litigation, then, it is impossible for the court to know precisely what happened to the 127 items of personal property Appellants seek to have returned. Under these circumstances, we cannot determine whether Appellants' cause of action is barred by the statute of limitations set forth in § 2401(a) by applying the standards set forth above.

In a case of seizure and wrongful refusal to return property where no civil or administrative forfeiture proceeding has been instituted against the property,

_____

that a reasonable statute of limitations must apply to Rule 41(e) motions. See Polanco, 158 F.3d at 653; Minor, 228 F.3d at 359; Duke, 229 F.3d at 629. Because it would be incongruous to apply a limitations period to some Rule 41(e) motions, e.g., where the government retained the claimant's property without ever commencing forfeiture proceedings against it, but not to other Rule 41(e) motions, e.g., where the government did commence administrative forfeiture proceedings but did not provide adequate notice to claimants, we find the § 2401(a) limitations period applicable to all Rule 41(e) motions, despite the "void" status of the latter type of forfeitures.

we return to the general principle that the accrual date of a cause of action is when the plaintiff discovered or had reason to discover that he has suffered injury due to the defendant's actions. See Polanco, 158 F.3d at 654; Minor, 228 F.3d at 359. Indeed, the "federal common law rule on when a statute of limitations begins to run is that it is when the plaintiff discovers, or by exercise of due diligence would have discovered, that he has been injured and who caused the injury." Duke, 229 F.3d at 630 (emphases in original) (citing United States v. Kubrick, 444 U.S. 111, 120-21 (1979); Fries v. Chicago & Northwestern Trans. Co., 909 F.2d 1092, 1095 (7th Cir. 1990); Oshover v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994)).

In the Rule 41(e) context, we hold that the date on which a claimant can reasonably be expected to inquire after property that has been seized by the United States in conjunction with criminal proceedings, but has not been the subject of criminal, civil or administrative forfeiture proceedings, is the date on which the criminal proceedings against the claimant have concluded. The government is clearly permitted to seize evidence for use in investigations and trial. See, e.g., Warden v. Hayden, 387 U.S. 294, 306 (1967); United States v. Premises Known as 608 Taylor Ave., Apt. 302, 584 F.2d 1297, 1302 (3d Cir. 1978). "Nevertheless, the government may not by exercising its power to seize, effect a [d]e facto forfeiture by retaining the property seized indefinitely." 608

Taylor Ave., 584 F.3d at 1302.  Thus, the general rule is that "seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated."[13]  Cooper v. City of Greenwood, 904 F.2d 302, 304 (5th Cir. 1990); see, e.g., United States v. Francis, 646 F.2d 251, 262 (6th Cir.

---

[13]  There are two types of contraband, contraband per se and derivative contraband.  Cooper, 904 F.2d at 305.  As the Fifth Circuit has explained:

Contraband per se consists of objects which are "intrinsically illegal in character," "the possession of which, without more, constitutes a crime."  One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699-700 (1965).  A typical example is cocaine, a controlled substance, the possession of which is unlawful under the Controlled Substances Act, 21 U.S.C. §§ 801 et. seq.  Courts will not entertain a claim contesting the confiscation of contraband per se because one cannot have a property right in that which is not subject to legal possession.  Id.; United States v. Jeffers, 342 U.S. 48 (1951), overruled on other grounds by Rakas v. Illinois, 439 U.S. 128 (1978).
    By contrast, derivative contraband includes items which are not inherently unlawful but which may become unlawful because of the use to which they are put – for example, an automobile used in a bank robbery. . . .  Because a property interest in derivative contraband is not extinguished automatically if the item is put to unlawful use, the forfeiture of such an item is permitted only as authorized by statute, Farrell [606 F.2d at 1343], and such forfeitures are subject to scrutiny for compliance with the safeguards of procedural due process.  See, e.g., United States v. $8,850 in U.S. Currency, 461 U.S. 555 (1983); United States v. $23,407.69 in U.S. Currency, 715 F.2d 162 (5th Cir. 1983); Vance v. United States, 676 F.2d 183 (5th Cir. 1982).

Id.  Thus, while a criminal defendant has no expectation that contraband per se will ever be returned, a criminal defendant does have a legitimate expectation that other property, including property that may well be derivative contraband, will be returned to him once the criminal proceedings against him conclude, unless and until the government successfully forfeits that property.

-31-

1981); United States v. Farrell, 606 F.2d 1341, 1343 (D.C. Cir. 1979); 608 Taylor Ave., 584 F.2d at 1302; United States v. LaFatch, 565 F.2d 81, 83 (6th Cir. 1977); United States v. Brant, 684 F. Supp. 421, 423 (M.D.N.C. 1988); cf. Lowther v. United States, 480 F.2d 1031, 1033-34 (10th Cir. 1973) (finding that the government could not, without commencing forfeiture proceedings, retain and destroy evidence which was not illegal per se after the claimant was acquitted of criminal charges). Accordingly, it has been recognized that the non-contraband "property of [an] accused in a criminal case, seized by officers and used as evidence, generally will be returned to him on proper application, and property taken under a search warrant is generally returned to its rightful owner when no longer needed in aid of a criminal prosecution if its ownership is undisputed." 79 C.J.S. Searches and Seizures § 114 (1952); Farrell, 606 F.2d at 1347 (stating that seized property should be returned to its rightful owner unless it is contraband, it has been forfeited by the government, or "the property involved is subject to government retention pending termination of the trial"); cf. United States v. Wilson, 540 F.2d 1100, 1101 (D.C. Cir. 1976) (acknowledging the district court's jurisdiction and duty to ensure the return of "property seized from [a criminal defendant] in the investigation but which is not . . . stolen, contraband, or otherwise forfeitable, and which is not needed, or is no longer needed, as evidence").

For these reasons, we hold that the limitations period for a Rule 41(e)

motion seeking the return of property that has been seized in conjunction with a

criminal investigation, but against which the government has not instituted

forfeiture proceedings, begins to run at the conclusion of the government's

criminal proceedings against the defendant. Prior to that point in time, the

government arguably has the right to possess the property as evidence (at least,

absent a successful suppression challenge) and the defendant consequently has no

reasonable expectation that it will be returned. After the criminal proceedings

conclude, however, the government has no right to retain the property, absent the

commencement of forfeiture proceedings, and its continued retention of the

property from that point forward could legitimately be viewed as a deprivation of

the defendant's due process rights.[14] It is at this point, then, that a criminal

---

[14] This holding is not precluded by our recent statement in United States v. Clymore, 245 F.3d 1195 (10th Cir. 2001), that the government holds "unperfected right to title" in derivative contraband "[a]t the time the government takes possession" of the property. Id. at 1200. The mere fact that the government may lawfully possess seized property prior to the commencement of forfeiture proceedings, and that the title to such property may vest in the United States after forfeiture proceedings have concluded, does not mean a criminal defendant should not reasonably be expected to inquire after the seized property once his criminal proceedings have concluded. As the Clymore panel noted, "'when the criminal proceedings have terminated . . . the person from whom the property was seized is presumed to have a right to its return, and the government must demonstrate that it has a legitimate reason to retain the property.'" Id. at 1201 (quoting United States v. Chambers, 192 F.3d 374, 377 (3d. Cir. 1999) (citations and quotations omitted)).

-33-

defendant can reasonably be expected to make an inquiry that would place him on notice of the government's intention to retain the property, thus allowing him to discover that his property is being held by the government despite the lack of forfeiture proceedings.

Appellants are seeking the return of property that was not contraband per se, although it may well have been derivative contraband, see supra n.14, and against which it appears the United States may not have instituted valid forfeiture proceedings. Appellants thus had a reasonable expectation that, once the criminal proceedings against them concluded and the government had failed to institute forfeiture proceedings against the property, that property would be returned to them. They could have inquired as to the United States' intended disposition of the property at that point in time, and Appellants' failure to do so does not excuse them of not learning information that the exercise of due diligence would most certainly have revealed. Cf. Duke, 229 F.3d at 630 ("The discovery rule does not permit the victim of an alleged wrong to postpone the running of the statute of limitations by willfully closing his eyes, ostrich-like, to a known probability that he has been injured, even if he is not certain. A plaintiff who either knew that he was injured or should have known is deemed to have 'discovered' the injury for purposes of the statute of limitations."). We therefore find that Appellants are charged with knowledge of the United States' alleged unconstitutional retention

-34-

of the property as of the date on which criminal proceedings against Appellants concluded.[15]

In summary, we hold that the limitations period contained in 28 U.S.C. § 2401(a) applies to Rule 41(e) motions for return of property, regardless of whether the property in question was administratively forfeited without adequate notice or was never forfeited but nonetheless retained by the government. In the former scenario, in which the claimant's property was administratively forfeited without notice, we hold that the claimant's cause of action accrues on the earliest of the following two dates: (1) the date on which the claimant discovered that the property was forfeited, or (2) the date on which the claimant could reasonably be expected to have made an inquiry that would have made him aware of the forfeiture. In the latter scenario, in which the property has been retained by the government despite its failure properly to forfeit the property, we hold that the claimant's cause of action accrues at the conclusion of the criminal proceedings

---

[15] We decline to determine here whether the conclusion of criminal proceedings occurs after the trial and sentencing, or whether it occurs only after the appeals process has run its course. We do not decide that issue, first, because the parties have not briefed that issue, and, second, because that determination is not necessary to the resolution of this case. Appellants were convicted on December 15, 1994, and direct appeals of the convictions of Rodriguez-Aguirre, Aguirre and Conteras were resolved in 1997. The Rule 41(e) motion was brought on April 20, 2000. It therefore appears that Appellants' motion was brought within the six-year statute of limitations provided by 28 U.S.C. § 2401(a) regardless of which date is used as the starting point for the limitations period governing Appellants' cause of action.

against him. Because we cannot determine at this point in the case which accrual date to apply, given the dearth of information regarding whether administrative forfeiture proceedings were ever brought against Appellants' property, we REMAND this case to the district court to determine in the first instance the timeliness of Appellants' Rule 41(e) motion.

## CONCLUSION

For the foregoing reasons, we hold that the district court erred in dismissing this case for lack of standing and in concluding that Appellants' claim was barred by the doctrine of laches. We further find that the limitations period set forth in 28 U.S.C. § 2401(a) applies to the bringing of this motion, but that the record is insufficient for us to determine in the first instance whether Appellants' motion was timely. We therefore REVERSE the district court's decision and REMAND this case for further proceedings consistent with this opinion.