**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM D. SCHNACK,

Plaintiff-Appellant,

v.

VALLEY BANK OF NEVADA,
and its successor Bank of America,

Defendant-Appellee.

No. 07-4149
(D.C. No. 2:04-CV-1026-DS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

William Schnack purchased a certificate of deposit ("CD") from Valley

Bank of Nevada ("Valley Bank"), a predecessor in interest to Bank of America

("the bank"). When he attempted to redeem his CD some fifteen years later, the

bank refused payment because it found no record of the CD. Dr. Schnack filed

this diversity suit to compel payment, but the district court dismissed the action,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

finding that the CD had already been redeemed, or, alternatively, that the claim was foreclosed by the doctrine of laches. Dr. Schnack appeals, and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

This case originates from another legal dispute in which Dr. Schnack and several co-defendants entered into a settlement agreement with Mann Enterprises, Inc., in 1986. Among other things, the agreement required Dr. Schnack to "deposit in the Registry of the United States District Court for the District of Utah . . . $500,000 in cash or equivalent." Aplt. App., Tab. 3 at 44. Pursuant to this provision, on April 29, 1986, Dr. Schnack purchased from Valley Bank a ninety-day CD in the amount of $500,000, proof of which was entered into the court registry on May 3, 1986. The CD was set to mature on July 28, 1986, but there is no record of any further activity until May 10, 2001, at which time Dr. Schnack moved the court to release the money. The court granted the motion, and on August 29, 2001, Dr. Schnack attempted to redeem his CD from the bank. The bank denied payment, however, because its earliest accounting records dating from June 7, 1988, showed no history of the CD. When Dr. Schnack failed to convince the bank to remit the $500,000, he sued.

The suit culminated in a two-day bench trial, after which the court dismissed the case. Based on the evidence, the court found that the CD had been redeemed sometime before June 7, 1988; that Dr. Schnack likely used the

proceeds of the CD to deposit $581,536.62 into an escrow account pursuant to another provision of the Mann settlement agreement; and even if the evidence did not show the CD had been redeemed, the bank had successfully raised the affirmative defense of laches because more than fifteen years had passed before Dr. Schnack sought redemption. This appeal challenges nearly all of the district court's findings, but particularly these three.

## II

We review the district court's findings of fact for clear error and its legal conclusions de novo. *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 1001 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 2872 (2008). Dr. Schnack first disputes the court's conclusion that the CD was redeemed before June 7, 1988. He argues that there was no evidence affirmatively showing that the CD had been redeemed prior to that date, and no record of the CD after that date because the bank searched the records from the wrong branch. He further asserts there was no evidence the bank followed its usual procedure for redeeming a CD and the records relied upon by the court were inaccurate. To buttress his position, he offers an alternative scenario in which he claims the bank gave him the original CD, which he deposited into the court's registry.

We begin with the evidence before the district court, which included the "Full Trial Reports," Aplt. App., Tabs 7 & 9, and the "Assignments Trials," *id.*, Tabs 8 & 10, from Valley Bank's Reno Plaza branch, the location where

-3-

Dr. Schnack purchased his CD. Both reports were from June 7, 1988, and January 1, 1992. The Full Trial Reports listed outstanding CDs, while the Assignments Trials designated whether a CD was being held as security, which would require release prior to redemption. Neither report contained any reference to Dr. Schnack's CD.

The bank also introduced Valley Bank's Central Information File (CIF) from September 6, 1988. *See id.*, Tab 12. The CIF was a comprehensive report, listing all customer accounts, and although it listed Dr. Schnack's demand deposit and loan accounts, it did not reference his CD.

Carol Theisen, a former operations officer and current assistant vice-president of the bank, testified that the absence of an entry on these reports indicated that the CD had been redeemed. *See id.*, Tab 13 at 121. She explained that when a customer purchased a CD, the customer would receive a receipt while the issuing branch would retain the original CD under lock. Outstanding CDs were then recorded on the Full Trial Reports, which were generated weekly and audited monthly for accuracy. Ms. Theisen stated that it would be "highly unlikely" for a locked CD to be missing from the issuing branch and omitted from the Full Trial Reports, but remain outstanding. *Id.* at 107. Though she acknowledged that a matured CD could be held in a suspense account, she explained that Valley Bank's policy was to alert customers when a CD had matured, inform them that it was no longer earning interest, and inquire whether

they wished to renew the CD. She added that before a CD escheated, the bank took additional efforts to contact the customer. On this note, Jerad Henry testified that he examined the bank's escheatment records but found nothing to indicate that the CD had been turned over to the state.

Also before the court were all 1099 IRS tax statements issued by the bank to Dr. Schnack for interest earned from 1991 through 2003. Here again, none of the statements were generated by Dr. Schnack's CD. Anna Canas, the custodian of the statements, testified that the absence of any 1099s for the CD indicated that it had been inactive and earned no interest from 1991 to 2003.

Based on this evidence, the district court concluded that the CD had been redeemed prior to June 7, 1988, the date of the bank's earliest retained records. We perceive no error in the court's conclusion. The bank's reports dating back to June 7, 1988, showed no trace of the CD; Ms. Theisen testified that the absence of any entries in any of the bank's regularly kept business records indicated that the CD had been redeemed; and she believed, albeit without personal knowledge, that the bank reports were "100-percent accurate," *id.* at 116. This evidence strongly suggests that the CD had been redeemed sometime before June 7, 1988. Although Dr. Schnack insists the bank's reports do not affirmatively show the CD has been redeemed, the reports are not intended to show that a CD has been redeemed. Rather, as Ms. Theisen testified, the reports list only open CDs, which, by negative implication, indicates that a CD not on the reports had already

been redeemed. *See id.* at 121. This was a reasonable inference to draw from the evidence.

Dr. Schnack asserts a host of challenges to this conclusion, but he offers no evidence to support his contentions. He charges that the bank's reports were inaccurate, even though the evidence indicated that the bank took measures to ensure the accuracy of its records. Ms. Theisen testified that two bank employees audited the reports monthly by reconciling the Full Trial Reports with the actual CDs maintained by each branch to ensure that the CDs on the reports matched those retained by the branch. Although she did not specifically know whether audits were conducted in 1986 or 1987 before she began working at the Reno Plaza branch, she knew that audits had been "ongoing" and that "[e]very branch had audits." *Id.* at 110. Dr. Schnack's insistence that "banks can, and do, make mistakes," Aplt. Br. at 21, attempts to ignore the mechanisms the bank implemented to avoid mistakes and ensure the accuracy of its records, *see* Aplt. App., Tab 14 at 142.

Dr. Schnack's hypothesis that his CD may be discovered at another branch is similarly unavailing. Ms. Theisen testified that the CD could not have been held at any branch other than Reno Plaza because that is where the CD was purchased. *Id.*, Tab 13 at 114. Paula Cobb corroborated that testimony, stating that CDs issued by a particular branch remain with that branch until redemption because each branch maintains its own inventory of CDs. Yet even if the CD had

been retained at another branch, it presumably would have appeared on the CIF; the fact that it did not demonstrates that this contention is purely speculative.

As for Dr. Schnack's contention that he received the original CD from Valley Bank and deposited it in the district court's registry, that, too, is against the evidence. Ms. Theisen testified that customers were given only a receipt, while the original CD was "locked up" at the issuing branch. *Id.* at 103. She explained that the "colored piece of paper" with "colored printing on it" received by Dr. Schnack was his receipt, clearly imprinted with the words, "nonnegotiable receipt." *Id.* Consistent with this testimony, Ms. Cobb stated that the copy given to customers expressly stated that it was a non-negotiable receipt, while the original CD retained by the bank contained no similar language. Instead, the original was encoded with its account and CD numbers, which were used to balance the general ledger. This testimony makes it apparent that the "hard paper stock multi[-]colored document" Dr. Schnack claims was the original CD, Aplt. Br. at 10, actually was his receipt.

None of Dr. Schnack's remaining contentions provide any basis for reversal. First, there was no evidence that the bank followed its usual redemption policy because the bank did not keep, nor was it required to keep, records dating back more than seven years, and Dr. Schnack offered no evidence of his own to suggest that the bank deviated from its policy. Second, he is correct that there would have been no 1099s generated from 1991 through 2003 because the CD

matured in 1986, but if the CD had rolled over, as he claimed, any interest earned by the renewed CD during that time frame would have generated a 1099; the fact that there were no statements related to his CD during that time supports the court's conclusion that the CD was redeemed before June 7, 1988. Third, although the CD could have been held by the bank in a suspense account, there was no evidence it actually was. Fourth, none of the bank's records referenced the CD, but again, because the bank was not required to retain records from as far back as 1986, it could not affirmatively show when the CD issued, matured, or was redeemed. And finally, there would have been no need for the bank to contact Dr. Schnack when the CD matured if he redeemed it upon maturation.

Turning to the next point of contention, Dr. Schnack claims there was no evidence supporting the court's finding that he used the proceeds of the CD to deposit $581,536.62 into an escrow account. The CD was purchased on April 29, 1986, it matured on July 28, 1986, and the escrow deposit was made on September 15, 1987. By June 7, 1988, there was no record that the CD remained outstanding. Given this timeline, it is entirely plausible that the CD was redeemed and the proceeds applied to the escrow deposit. Because Dr. Schnack's unsupported testimony to the contrary leaves us without a "definite and firm conviction that a mistake has been committed," *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quotation omitted), the court's ruling will stand.

Lastly, Dr. Schnack argues that laches cannot bar his suit because the statute of limitations had not yet run on his CD. Laches is an equitable defense "primarily left to the discretion of the trial court." *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1338 (10th Cir. 1982) (quotation omitted). To invoke the defense, a "defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by the delay." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001) (emphasis and quotation omitted).

The bank satisfies both criteria. Dr. Schnack waited fifteen years before attempting to redeem the CD and another three years before bringing this action. This eighteen-year delay surely prejudiced the bank, because the bank justifiably destroyed its account records after seven years and cannot now adequately defend itself. Dr. Schnack argues the statute of limitations had not yet run on his claim and therefore laches may not be invoked to shorten the statutory period, but "[w]hether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice," *id.* In this case, Dr. Schnack failed to "exercise reasonable diligence in protecting his rights." *Jicarilla Apache Tribe*, 687 F.2d at 1338. He believed his CD would renew, but he received no 1099s relating to the CD from 1991 through 2003 and offered no evidence indicating that the CD remains outstanding. He claimed the CD could not be redeemed until the Mann settlement agreement was satisfied, but for

-9-

fifteen years he never even checked on the CD's status. It is untenable and unreasonable to leave a $500,000, ninety-day CD unchecked for fifteen years, and then charge the bank with liability after it justifiably destroyed its records. Under these circumstances, the district court acted within its discretion in applying laches as an alternative basis for dismissing the claim.

The judgment of the district court is AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge