**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-6047

CURTIS BERNARD MINOR,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-91-201)

Argued: May 4, 2000

Decided: September 13, 2000

Before WILKINS, MOTZ, and KING, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Wilkins and Judge King joined.

_____

**COUNSEL**

**ARGUED:** James Richard Glover, GLOVER & PETERSEN, P.A.,
Chapel Hill, North Carolina, for Appellant. Michael Francis Joseph,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney,
Lynne P. Klauer, Assistant United States Attorney, Greensboro, North
Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This case requires us to decide whether the United States provided adequate notice to a prisoner in government custody before it declared property owned by that prisoner administratively forfeited. The prisoner, Curtis Bernard Minor, brought this action, seeking return of $5214 in currency seized from his residence after his arrest in 1991. We hold that Minor did not receive adequate notice of the administrative forfeiture and vacate the district court's contrary holding, but because the record is unclear as to when Minor did learn of the forfeiture, we remand for a determination of whether the statute of limitations nonetheless bars the present action.

I.

On July 30, 1991, federal marshals and Winston-Salem police officers arrested Minor outside of his home for various parole violations. The officers took Minor into custody, where he has remained continuously since his arrest.

During a protective sweep of Minor's house incident to his arrest for the parole violations, the officers observed a quantity of cocaine, a 9 mm semi-automatic pistol, and currency totaling $5214. After Minor refused to grant the officers permission to search the house, the officers obtained a search warrant and returned later to seize the drugs, gun, and currency. On November 5, 1991, Minor entered a plea of guilty to possession of cocaine with intent to distribute and to having used and carried a firearm during a drug trafficking crime.[1]

In October 1991, the Drug Enforcement Administration (DEA) initiated administrative forfeiture of the currency that had been found in Minor's residence. Pursuant to summary procedures set forth in 19 U.S.C. §§ 1602-19 (1994 & Supp. IV 1998), the United States may, without resort to judicial proceedings, issue a declaration of forfeiture

_____

[1] The district court ultimately vacated the latter conviction when the government conceded that, in light of Bailey v. United States, 516 U.S. 137 (1995), it could not establish all of the elements of the offense.

2

for property worth less than $500,000 that is otherwise subject to criminal forfeiture. See 21 U.S.C. § 881(d) (1994) (providing that summary forfeitures under drug laws will be governed by provisions of law applicable to such forfeitures under customs laws). The summary procedures provide, among other things, that the government must publish notice of its intention to declare forfeiture of the seized property and must provide written notice to interested parties. See 19 U.S.C. § 1607. The government may declare the property forfeited if, within 20 days of the first publication of the notice, no person files a claim for the property. See id. § 1609. If a claim is filed, the government may seek forfeiture of the property only through judicial proceedings. See id. § 1608.

The DEA published notice of its intention to declare forfeiture of the $5214 in USA Today for three successive weeks in October and November 1991. On October 21, the DEA mailed three written notices of the forfeiture. Notwithstanding the fact that Minor was in government custody, the DEA sent two of these notices to Minor's residence, one addressed to Minor himself, the other to his wife, Sheila Minor, who signed postal receipts for both notices on November 13. The third notice was addressed to Minor at the Forsyth County Jail in Winston-Salem, North Carolina. On November 18, this third notice was returned to the DEA's forfeiture office marked "RETURN TO SENDER."

Although Minor was in state custody for a brief period after his arrest, the record indicates that he has been in federal custody continuously since at least September 17, 1991. The record does not disclose precisely where Minor was incarcerated in October and November 1991, but the government does not dispute Minor's assertion that he was held in federal custody and not in the Forsyth County Jail during this period. Moreover, in accordance with the magistrate's detention order, the United States was able to retrieve Minor for his October 1991 arraignment in federal court from the prison where he was jailed at the time.

The DEA received no claims to the $5214 seized from Minor's residence. Accordingly, on December 9, 1991, it declared the property forfeited to the United States. Under the applicable procedures, that declaration has "the same force and effect as a final decree and order

3

of forfeiture in a judicial forfeiture proceeding in a district court of the United States." See 19 U.S.C. § 1609.

On April 16, 1998, more than six years after the government's declaration of forfeiture, Minor filed a pro se motion for return of the currency in the United States District Court for the Middle District of North Carolina, the judicial district in which he had been convicted. In this motion, Minor alleged that he had "never received notice of any forfeiture, or forfeiture proceedings."

The district court denied Minor's motion in a brief order, stating that the government had provided notice of the forfeiture and that Minor had failed to respond during the statutorily prescribed time period. This court then granted Minor leave to appeal in forma pauperis[2] and appointed counsel for him.

II.

We must first decide whether we have jurisdiction to hear Minor's appeal.

The government, characterizing Minor's motion for return of the currency as an action for money damages under the Tucker Act, urges us to transfer this case to the United States Court of Appeals for the Federal Circuit. Under the Tucker Act's jurisdictional provisions, a district court may adjudicate civil actions against the government for claims not exceeding $10,000, see 28 U.S.C.§ 1346(a) (1994), but the Federal Circuit has "exclusive jurisdiction of an appeal from a final decision of a district court . . . if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title." 28 U.S.C. § 1295(a)(2) (1994).

_____

[2] In the future, we will require a litigant in Minor's position, bringing an equitable challenge to a completed forfeiture, to comply with the fee provisions of the Prisoner Litigation Reform Act, 28 U.S.C. § 1915 (Supp. IV 1998). In United States v. Jones, 215 F.3d 467 (4th Cir. 2000), argued the same day as this case, we held that a motion for return of property under 41(e) constitutes a civil action to which these fee provisions apply. The reasoning in Jones requires the conclusion that the fee provisions apply in this related context as well.

4

We disagree with the government's characterization of Minor's motion as an action for money damages under the Tucker Act. Even though Minor seeks return of currency, we can see no persuasive reason to treat his motion differently than an action in equity for the return of a tangible item of personal property. In suing for return of the currency, Minor seeks restitution of "the very thing" to which he claims an entitlement, not damages in substitution for a loss. See Bowen v. Massachusetts, 487 U.S. 879, 895 (1988). A court sitting in equity has jurisdiction to order money damages if it cannot effect return of the specific property at issue, and an award of monetary relief under those circumstances "does not alone alter the equitable character of the relief requested." Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1099 (9th Cir. 1990); see also Bowen, 487 U.S. at 893 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as `money damages.'"). Here, the fact that the government obviously cannot restore to Minor the specific currency that was seized does not transform the motion into an action at law. Cf . United States v. Jones, No. 99-6398 (4th Cir. Sept. 13, 2000) (holding sovereign immunity deprives courts of jurisdiction to award monetary damages in lieu of destroyed property in a Rule 41(e) action). Rather, this is an equitable action over which we have jurisdiction, and we reject the government's suggestion that we transfer the case to the Federal Circuit.

We note that our sister circuits, without exception, have similarly found that they have jurisdiction to consider such challenges. See United States v. Woodall, 12 F.3d 791, 793 (8th Cir. 1993) (observing that "the federal courts have universally upheld jurisdiction to review whether an administrative forfeiture satisfied statutory and due process requirements"). To date, at least nine courts of appeals have considered due process challenges to administrative forfeitures, and none has found that it lacked jurisdiction because of the procedural provisions of the Tucker Act, or for any other reason. See United States v. Dusenbery, 201 F.3d 763, 766 n.7 (6th Cir. 2000); Polanco v. DEA, 158 F.3d 647, 651 (2d Cir. 1998); Small v. United States, 136 F.3d 1334 (D.C. Cir. 1998); United States v. Clark , 84 F.3d 378, 381 (10th Cir. 1996); Armendariz-Mata v. United States Dep't of Justice, 82 F.3d 679, 682 (5th Cir. 1996); United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995); Woodall, 12 F.3d at 793; Marshall Leasing, 893 F.2d at 1098-1102; Willis v. United States, 787 F.2d 1089, 1092-93

5

(7th Cir. 1986). Although the Second and Eighth Circuits may view the Tucker Act as an alternative basis for jurisdiction, see Woodall, 12 F.3d at 793; Onwubiko v. United States, 969 F.2d 1392, 1398 (2d Cir. 1992); but see Polanco, 158 F.3d at 651 (questioning the continuing authority of Onwubiko), every other circuit that has addressed the jurisdictional issue has viewed challenges like Minor's as we do--as equitable actions.

While we are confident that Minor's motion is not an action at law under the Tucker Act, and that its roots are in equity, identifying the precise character of Minor's motion presents greater difficulty.**3** Courts have recognized the right to judicial review of forfeitures for almost two hundred years: "[r]igorous judicial review of forfeitures began at least as early as Slocum v. Mayberry , 15 U.S. (2 Wheat.) 1, 10, 4 L. Ed. 169 (1817) (Marshall, C.J.), and continues today." See Woodall, 12 F.3d at 793; see also Onwubiko , 969 F.2d at 1398 (citing The Rio Grande, 90 U.S. (23 Wall.) 458, 465 (1874)).

Yet the courts that have considered challenges similar to Minor's have devoted little attention to the substantive source of the right to bring such a challenge. The Fifth Circuit has held that the Administrative Procedure Act, 5 U.S.C. § 702 (1994), not only waives sovereign immunity for equitable actions against the government, but also "creates a right of review regarding actions by federal agencies" encompassing a challenge to the adequacy of notice of an administra-

_____

**3** Minor styled his action in the district court as one under Fed. R. Crim. P. 41(e). That rule provides that "[a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." Minor's action has many substantive affinities with a motion for return of property under Rule 41(e), see supra n.2, but it stretches the rule too far to say that Minor's cause of action here derives directly from it. A criminal defendant may move pursuant to Rule 41(e) for return of property seized in his criminal case even after the close of trial. See United States v. Garcia , 65 F.3d 17, 20 (4th Cir. 1995). Here, however, not only has the criminal case closed, but the seized property has long since been declared forfeited to the government. It seems unlikely that Rule 41(e) provides a remedy when the challenge comes years after the completion of the forfeiture.

6

tive forfeiture. See Armendariz-Mata, 82 F.3d at 682.**4** The Seventh Circuit, in an equally brief discussion, has held to the contrary--that although the APA effects a waiver of sovereign immunity, it does not serve as a substantive source for the right to bring an action. See Willis, 787 F.2d at 1093. Instead, the Seventh Circuit located the right to challenge the adequacy of notice of an administrative forfeiture directly in the Fourth and Fifth Amendments to the Constitution. Id.

We need not decide whether the APA provides a substantive source for a cause of action to challenge the administrative forfeiture in this case because we agree that in any event the Constitution does. Recognizing an equitable cause of action in this context clearly effectuates Fourth Amendment protections against improper seizure and Fifth Amendment guarantees of due process. The failure to provide adequate notice of an administrative forfeiture raises the prospect of the government taking ownership of private property while the former owner of that property remains wholly ignorant of the transaction. The adequacy of notice of an impending forfeiture is thus a matter of obvious constitutional magnitude. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (observing that the right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest"). When constitutional interests are so clearly implicated, federal courts have broad discretion to fashion a remedy in equity. See Bell v. Hood, 327 U.S. 678, 684 (1946) ("[I]t is established practice . . . to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution."); see also Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 404 (1971) (Harlan, J., concurring in the judgment) (discussing "the presumed availability of federal equitable relief against threatened invasions of constitutional interests").

Recognition of an equitable cause of action to challenge an administrative forfeiture based on inadequate notice--a cause of action that

_____

**4** The APA makes reviewable any"final agency action for which there is no other adequate remedy in a court," 5 U.S.C.§ 704, so long as the statute under which the agency acted does not preclude judicial review or the agency action is not "committed to agency discretion by law." 5 U.S.C. § 701(a).

7

has been recognized by at least nine other courts of appeals--falls squarely within our discretion to safeguard constitutionally-protected interests.**5** We therefore find that we have jurisdiction to consider Minor's constitutionally-derived equitable challenge to the administrative forfeiture of the currency under the provisions for general federal question jurisdiction. 28 U.S.C. §§ 1291, 1331 (1994).

III.

We turn now to the question of whether the government provided adequate notice to Minor of the administrative forfeiture of the currency. To recap, while retaining Minor in custody, the government published notice of the forfeiture for three consecutive weeks in USA Today, sent two notices of the forfeiture to Minor's residence, and sent a third notice to the Forsyth County Jail, in which Minor was not incarcerated. The government maintains that these actions sufficed to apprise Minor of the impending forfeiture. Precedent and logic require us to reject this argument.

In Mullane, the Supreme Court gave content in the forfeiture context to the basic due process notice requirement. Notice, the Court held, must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." 339 U.S. at 314. The Court then elaborated on this standard:

> [W]hen notice is a person's due, process which is a mere

---

**5** Recognition of the right to challenge an administrative forfeiture based on inadequate notice also serves to effectuate safeguards built into the framework of the forfeiture statute itself. Under that statutory framework, "[a]ny person claiming such [property] may at any time within twenty days . . . of the notice of seizure file with the appropriate customs officer a claim stating his interest therein" and thereby force the government to proceed by judicial condemnation. See 19 U.S.C. § 1608; see also Woodall, 12 F.3d at 793 (noting that,"[u]nder the Tariff Act, the statutory right to compel an agency to proceed by judicial condemnation is a vital congressional restraint on arbitrary confiscations"). The opportunity for interested parties to contest an administrative forfeiture in a judicial forum has little meaning in the absence of notice to those parties that the forfeiture is taking place.

8

> gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

Id. at 315 (emphasis added) (citations omitted). The Mullane Court held that notice of forfeiture via newspaper advertisement, standing alone, was constitutionally insufficient. Id. In a later case, the Court held that a state had not provided constitutionally adequate notice of a forfeiture when it sent notice only to the owner's home address while the owner was being held in state custody. See Robinson v. Hanrahan, 409 U.S. 38 (1972) (per curiam).

Applying the Mullane standard, the First, Second, and Eighth Circuits have expressly held that when an owner of property is being held in federal custody, the federal government must provide "actual notice" to the owner of an impending administrative forfeiture. See Weng v. United States, 137 F.3d 709 (2d Cir. 1998); Giraldo, 45 F.3d at 511; Woodall, 12 F.3d at 794-95. In Weng, when the DEA sent notice to the correct prison but took no steps to see that the notice was actually delivered to the owner, the Second Circuit suggested that the agency seeking forfeiture "secure the Bureau[of Prison]'s cooperation in assuring that the notice will be delivered to the owner and that a reliable record of the delivery will be created." 137 F.3d at 715. The court remanded the case for a determination of whether the owner "in fact received the notices of forfeiture that were mailed to him in care of the [prison]." Id.

The Third Circuit, in a recent en banc decision, explicitly disagreed with this standard. See United States v. One Toshiba Color Television, 213 F.3d 147 (3d Cir. 2000). In One Toshiba Color Television, a federal prisoner being held in a state facility claimed that he had not received notice of a past administrative forfeiture, and he argued that notice by direct mail to the state prison was insufficient to satisfy the standards of the Due Process Clause. The Third Circuit acknowledged

9

that an "actual notice" standard "comports with our ideas of the sort of effort that the government should undertake when it wishes to effect notice of a forfeiture proceeding against a prisoner in federal custody." Id. at 155.

Two concerns prevented the court from adopting this standard, however. First, the Third Circuit worried that "actual notice" could impose an undue evidentiary burden on the government, particularly in cases in which the prisoner challenged the sufficiency of notice long after the completion of the forfeiture. In such cases, "[a]n overly strict notice requirement could lead to unsettling the outcome of completed proceedings based on nothing but bare allegations of a party who had lost property." Id. Second, the court read Supreme Court precedents from related contexts to focus, in determining the adequacy of notice, on "the procedures in place to effect notice" rather than on receipt of notice in the particular case. Id. (citing Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 799-800 (1983)).

We agree with the First, Second, and Eighth Circuits that an actor in the federal government's position--holding a property owner in custody and at the same time "desirous of actually informing" the property owner of the impending forfeiture, Mullane, 339 U.S. at 315 --would take steps to ensure that the imprisoned owner actually receives notice. We agree with the Third Circuit, however, that the focus of the inquiry should ordinarily be on the procedures employed, and that the government should not be required to prove that the prisoner in the particular case actually received notice. Like the Third Circuit, we think that Mullane's requirement of notice "reasonably calculated, under all the circumstances, to apprise interested parties," 339 U.S. at 314 (emphasis added), mandates a context-specific inquiry, and that the requirements of Due Process therefore likely depend not only on the reliability of the procedure employed, but on how reliably that procedure functions in the particular facility in which the prisoner is incarcerated, and on whether it would be substantially more burdensome for the government to employ a more reliable procedure. We anticipate that in most cases the Due Process Clause would be satisfied if the government sent a certified letter, return receipt requested, to the facility at which the prisoner was being housed; a prison official signed for the letter; and the government introduced evidence that mail delivery procedures existed at that

10

facility that "were reasonably calculated to ensure that the notice, once addressed to [the inmate], would still reach him upon arrival at the prison (and indeed, would only be accepted were[the inmate] actually present)." One Toshiba Color Television, 213 F.3d at 156.

In any event, we have little trouble concluding in this case that the notice that the government afforded to Minor was insufficient under the Mullane standard. Publication notice and notice to a person's residence while he is imprisoned are "mere gesture[s]." Id. at 315. The government has cited no case in which a court of appeals has found notice similar to that afforded Minor to be constitutionally adequate. Meanwhile, in addition to the three circuits requiring "actual notice," two other circuits have held that notice essentially identical to that afforded by the government to Minor was insufficient to satisfy constitutional standards. See Small, 136 F.3d at 1335; Armendariz-Mata, 82 F.3d at 683. Cf. One Toshiba Color Television , 213 F.3d at 155-56 (finding that even notice by direct mail to the correct prison facility might be insufficient under some circumstances).

Administrative forfeitures empower the government to take ownership of property without resort to any judicial proceeding whatsoever, placing due process rights at particular risk. Here, the government did not act as if it were "desirous of actually informing" Minor of the impending forfeiture. We therefore vacate the district court's holding that he received adequate notice.

IV.

Finally, we address the government's statute of limitations argument. The government maintains that even if it provided constitutionally inadequate notice to Minor, limitations now bar this action.

The applicable limitations period, six years, is set forth in 28 U.S.C. § 2401(a) (1994). That statute, enacted as part of the Tucker Act, is a catch-all provision; it establishes a general limitations period for civil lawsuits against the United States not otherwise covered by a more specific limitations period. Even if, as here, no specific limitations period applies directly to the cause of action at issue, a federal court will first seek to "borrow" a limitations period applicable to a closely analogous federal or state action. See, e.g., DelCostello v.

11

International Bhd. of Teamsters, 462 U.S. 151, 158 (1983). Minor's action, an equitable cause of action derived from the Constitution, "is not closely analogous to any statutory cause of action." See Polanco, 158 F.3d at 653 (declining to adopt three-year limitations period applicable to Bivens actions). Accordingly, we do not "borrow" a limitations period; rather we apply the six-year period prescribed by § 2401.**6**

To do so we must ascertain when Minor's cause of action accrued. The accrual date is the date on which Minor was on reasonable inquiry notice of the forfeiture, i.e., the earlier of the following: when he first became aware that the government had declared the currency forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture. We emphasize that the limitations period begins to run, not when the claimant is on reasonable inquiry notice of the government's seizure of the property, or even when reasonable inquiry would have led to notice of the government's intention to declare forfeiture, but when reasonable inquiry would have led to notice of the forfeiture declaration itself. Cf. Polanco, 158 F.3d at 654 ("Polanco's cause of action accrued when he discovered or had reason to discover that his property had been forfeited without sufficient notice."). The cause of action can accrue no earlier than the date that forfeiture actually occurred, because until that date the owner has not actually incurred the specific injury alleged--deprivation of property without constitutionally adequate notice.

In this case, therefore, the earliest date on which the cause of action could have accrued is the date of the forfeiture, December 16, 1991. If Minor's cause of action did accrue on that date, then, unless the limitations period should be tolled, § 2401 bars the present action because Minor did not file this lawsuit until April 16, 1998, six years and four months later. The record, however, is not sufficiently developed for us to determine when the cause of action actually accrued

_____

**6** We note that § 2401 governs actions brought under both the APA, see, e.g., Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997), and the Tucker Act. Thus, even if it were appropriate to "borrow" a limitations period from an analogous cause of action, a court might well look to § 2401.

12

in this case. On remand, the district court must determine whether Minor was on reasonable inquiry notice of the forfeiture declaration before April 16, 1992. If so, absent any reason that the limitations period should be tolled, Minor is barred from proceeding with this action. If not, he may proceed.

In the latter instance, the government itself may have a limitations period with which to contend. Under 19 U.S.C. § 1621 (1994), the government has "five years after the time when the alleged offense was discovered" within which to institute forfeiture proceedings. The circuits have divided on the effect of this limitations period when the government fails to give adequate notice of a forfeiture. Some have held that a finding of inadequate notice voids the prior forfeiture, and that the expiration of the five-year limitations period therefore operates to prevent the government from perfecting its initial declaration of forfeiture. See United States v. Marolf, 173 F.3d 1213 (9th Cir. 1999); Clymore v. United States, 164 F.3d 569 (10th Cir. 1999). Others have held that a finding of inadequate notice simply puts the claimant in the position he would have been in had he received adequate notice at the time of forfeiture; that is, such a finding requires the government to pursue the forfeiture on the merits in judicial proceedings. See Dusenbery, 201 F.3d at 768; Boero v. DEA, 111 F.3d 301, 306 (2d Cir. 1997).

We will not attempt to resolve the issue here because the parties have not briefed the question, and because it may be that it need never be resolved in this case. This is so because if§ 2401 bars Minor's suit, then he has no further remedy. Despite our finding that he received inadequate notice of the forfeiture, Minor may not disturb the government's possession of property if he did not challenge its possession in a timely fashion. Therefore, the district court need reach the issue of the effect of the government's statute of limitations only if Minor's action is itself not barred.

V.

We vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

13