**Allah BURMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. L–03–1165.**

United States District Court, D. Maryland.

Feb. 7, 2007.

Allah Burman, El Reno, OK, Pro se.

Christopher J. Romano, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM

LEGG, Chief Judge.

On April 17, 2003, Allah Burman ("Burman") filed a motion seeking the return of property that the government seized from him in 2001 pursuant to a search warrant in a drug case. The Court will, by sepa-

rate Order, VACATE the Court's Order dated August 14, 2006, GRANT Burman's motion for the return of $824, and RESERVE JUDGMENT on the remaining property. This Order specifies the facts that the government must supply regarding the remaining property and sets deadlines so that this old case can be decided.

## I. Background

Burman seeks the return of the following seized property: (i) a 2001 Suzuki GSXR 750 motorcycle, (ii) assorted jewelry, and (iii) United States currency. Law enforcement officers seized these items from a home at 14407 Sequoia Bend Boulevard in Houston, Texas, as part of a drug investigation. The investigation led to the indictment of Burman and others. *United States v. Burman,* Crim. No. L–00–0115 (D.Md.). On January 29, 2003, after a two-and-a-half week trial, a jury convicted Burman on two counts: (i) conspiring to distribute cocaine and (ii) possession with intent to distribute cocaine.

Soon after Burman's arrest, the Drug Enforcement Agency (DEA) began civil forfeiture proceedings against the seized property pursuant to 21 U.S.C. § 881. Property purchased with the proceeds of drug trafficking is subject to forfeiture. 21 U.S.C. § 881(a)(6). By statute, the government must initiate a forfeiture case, which is administrative, by giving written notice to any interested party. The government is also required to publish notice in a publication of general circulation. 18 U.S.C. § 983(a)(1)(A)(i); 19 U.S.C. § 1607(a).

A person who receives written notice (hereinafter "Notice" or "Notice of Forfeiture"[1]), or who learns of the forfeiture proceedings by other means has a specified time in which to file a claim. The claimant has two options. He may file a request for judicial forfeiture proceedings with the seizing agency. The agency must refer the request to the applicable United States Attorney, who then files a complaint for forfeiture in federal district court. 18 U.S.C. § 983(a)(3). The claimant may also elect to remain in the administrative forum by filing a petition for remission or mitigation.[2]

If a person to whom notice was sent does nothing and the administrative tribunal declares the property forfeited, the district court, by statute, lacks subsequent jurisdiction over the property with one exception. If the claimant alleges that the government failed to provide him with adequate notice and that he did not otherwise know of the forfeiture proceedings, the district court must decide that issue.[3] If the court concludes that the claimant was adequately advised of the forfeiture proceedings, the court must dismiss the claim. If, however, the court concludes that notice was lacking, then the government must return the property and/or file a new forfeiture action.[4]

---

1. Each Notice is labeled "Notice of Seizure." For purposes of clarity, the Court will use the term "Notice of Forfeiture."

2. 28 C.F.R. §§ 9.1–9.9. Claimants are eligible for remission of the forfeiture in some circumstances. They may, for example, establish that if they are "innocent" within the terms of the underlying forfeiture statute. 28 C.F.R. § 9.5(a). Claimants who are not entitled to remission but who can show that they were not involved in the underlying offense and that the forfeiture would cause them extreme hardship may be entitled to mitigation. 28 C.F.R. § 9.5(b).

3. *See* 18 U.S.C. § 983(e)(5) ("A motion under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute."); *see also United States v. Minor,* 228 F.3d 352, 355–57 (4th Cir.2000); *Ibarra v. United States,* 120 F.3d 472, 474–76 & n. 4 (4th Cir.1997).

4. 18 U.S.C. § 983(a)(1)(F).

Burman filed the instant Motion for Return of Property on April 17, 2003. He makes a number of claims, including that the property was seized without probable cause, the search warrant was defective, and that the prosecution presented perjured testimony to the grand jury that indicted Burman. By statute, this Court has jurisdiction over only one of Burman's contentions, that he was not adequately notified of the forfeiture proceedings. Accordingly, the Court will treat his filing as a motion to set aside the forfeiture for insufficient notice.

## II. Standard

Under 18 U.S.C. § 983(e), an "interested party" may move to set aside a declaration of forfeiture if (i) the government failed to take reasonable steps to provide him with notice, and (ii) the moving party did not otherwise know or have reason to know of the forfeiture in time to file a timely claim.

The Fourth Circuit has provided substantial guidance in this area. *See United States v. Minor,* 228 F.3d 352 (4th Cir. 2000). The Court places the burden on the government to show that it took "reasonable steps" to provide notice to the claimant. The case law also spells out the requirements of "reasonable notice" to a federal prisoner.[5] The government must (i) send a certified letter, return receipt requested, to the facility where the prisoner is housed, (ii) show that a prison official signed for the letter, and (iii) provide evidence "that mail delivery procedures existed at that facility that 'were reasonably calculated to ensure that the notice, once addressed to [the inmate], would still reach him upon arrival at the prison (and indeed,

would only be accepted were [the inmate] actually present).'" *Id.* at 358 (quoting *United States v. One Toshiba Color Television,* 213 F.3d 147, 156 (3d Cir.2000)). Notice sent to the inmate's relatives, lawyer, or former residence is insufficient.

While *Minor* does not address the second prong, logic suggests that the government would also carry the burden of proving that the claimant otherwise knew or should have known of the forfeiture.

## III. Analysis

Applying the tests to the instant case is complicated.[6] As will be discussed, the DEA sent multiple Notices of Forfeiture to Burman, addressed to several jails, to his mother, and to attorneys who had represented him. These Notices specified the property involved and advised Burman of the formal requirements for making a claim. There is no direct evidence that any of the notices ever reached Burman. With respect to the Notices that were sent to Burman in jail, the government has failed to offer any proof that Burman was at that particular jail when notice was delivered, that the person who signed for the letter was a prison official, or that mail delivery procedures at the jail were reasonably calculated to ensure that the Notice reached Burman.

Burman evidently knew that the government was seeking forfeiture of some of his property. He mailed the DEA letters asking what was happening with certain items. The DEA treated these letters as requests for judicial forfeiture proceedings, but denied the requests either be-

---

5. Deciding whether the government's efforts were reasonable requires a "context-specific inquiry." *Minor,* 228 F.3d at 358.

6. The Court previously issued a Memorandum and Order granting Burman's motion with respect to $824, denying it with respect to the

jewelry and $6,000, and ordering further briefing on the motorcycle and $15,000 (Docket No. 10). In retrospect, the Court concludes that this Order was based on an inadequate legal and factual basis. Accordingly, the Court will VACATE the August 14th Order in its entirety.

cause they were untimely or because Burman had failed to submit his claims under oath as required by the statute.[7]

The DEA mailed Burman a number of corrective notices advising that his claim must be sworn under oath, subject to the penalties of perjury, and giving him 20 days to cure the defect. Except with respect to one item of property ($824), Burman never filed a claim that met the formal requirements. There is no direct evidence that any of these corrective notices ever reached Burman, however. Moreover, there has been no briefing whether these corrective notices are subject to the "reasonable steps" requirement of § 983. If they are, the government has made no effort to establish that Burman was at the jail to which the corrective notices were addressed or any of the other requirements established by the Fourth Circuit for notice to a federal prisoner.

Because the record is deficient, the Government has two options:

(i) The government can attempt to complete the record by presenting evidence on the "reasonable steps" prong. If the government can show that it took reasonable steps, then Burman failed to submit a proper verified claim for any of the items except for $824. Except with respect to this item, Burman's motion to set aside the forfeiture would be denied.

(ii) The government can, if limitations have not run, re-initiate forfeiture proceedings by addressing Notices of Forfeiture to Burman at his present place of federal incarceration for each of the items except the $824.[8]

In a separate order, the Court will give the government a time limit for choosing between these options. The remainder of this opinion outlines the present state of the record with respect to each of the items subject to forfeiture.

## A. Motorcycle (Asset I.D. No. 01–DEA–393568)

### 1. History of Notices with Respect to the Motorcycle

On July 6, 2001, the DEA sent a Notice of Forfeiture for the motorcycle by certified mail, return receipt requested, to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas, where Burman resided prior to his arrest. The Notice was returned unclaimed.

(ii) The Law Offices of Ronald Green, Esq. ("Green") in Houston, Texas. Green had at one time represented Burman in a criminal case. A person named "T. Anderson" signed for the Notice. On July 16, 2001, Green informed the DEA that he was no longer Burman's counsel and requested that correspondence be directed to the United States Marshal in Baltimore.[9]

(iii) The Federal Detention Center in Houston, Texas ("FDC–Houston"). A person whose name is illegible signed for the Notice.[10]

---

7. The claim must "(i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." 18 U.S.C. § 983(2)(C).

8. If the government wishes to pursue this option, it should explain whether it is first required to return the property to Burman under § 983(a)(1)(F).

9. Government's Supplemental Briefing (hereinafter "Govt. Supp. Briefing"), Ex. 7 (Docket No. 15).

10. The DEA published announcements of the seizure of the motorcycle and the other contested items in *The Wall Street Journal* for three consecutive weeks during the summer of 2001. The government does not contend that these advertisements were sufficient by themselves to notify Burman of the seizure.

In a letter dated December 31, 2001 and received by the DEA on January 8, 2002, Burman stated that he had received no correspondence about the motorcycle and asked for a status report.[11] The DEA treated the letter as a request for judicial forfeiture proceedings, but rejected the request because it was not made under oath, subject to penalty of perjury, as required by 18 U.S.C. § 983(a)(2)(C)(iii).[12]

On January 18, 2002, the DEA issued a corrective notice granting Burman 20 more days to file a timely request for judicial forfeiture proceedings. It sent the corrective notice to the following addresses:

(i) The Law Offices of Thomas Saunders. Saunders had been appointed as trial counsel in Burman's criminal case on October 5, 2001. (Crim. Case No. L–01–115, D. Md., Docket No. 110). A person whose name is illegible signed for the corrective notice on January 25, 2002.[13]

(ii) 911 Dartmouth Glen Way, Baltimore, Md. This is the address of Burman's mother, Shirley Burman. Ms. Burman signed for the corrective notice on January 24, 2002.[14]

(iii) The Maryland Correctional Adjustment Center ("MCAC") in Baltimore, Maryland, which was the return address on Burman's December 31st letter. A person named "Tameka Sally" signed for the corrective notice on January 24, 2002.[15]

Also on January 18, the DEA issued a new Notice of Forfeiture for the motorcycle and sent it to the following addresses:

(i) The Law Offices of Thomas Saunders. It is unclear whether anyone signed for it.

(ii) MCAC. A person named "Tameka Sally" signed for the Notice of Forfeiture on January 22, 2002.

On February 6, 2002, within the 20–day window for correcting the defect, the DEA received another letter from Burman stating that he wished to contest the forfeiture of the motorcycle.[16] Although the return address on the envelope was "The Law Offices of Thomas J. Saunders," Burman explained in his letter that Saunders no longer represented him.[17]

The DEA treated the letter as a request for judicial forfeiture proceedings. In a corrective notice dated February 27, 2002, it denied the request because Burman had failed to sign and swear his statement under oath, subject to penalties of perjury. Burman was once again granted 20 days to cure the defect.[18] The DEA sent the corrective notice to Saunders, but the U.S. Postal Service returned the certified mail slip unsigned.[19]

On May 2, 2002, the DEA issued a third corrective notice, again giving Burman 20 days to file a proper request for judicial

---

*See* Government's Response (hereinafter "Govt. Resp."), Ex. 154 (Docket No. 3); Govt. Supp. Briefing, Ex. 8. Moreover, the Fourth Circuit has stated that notice by publication while a person is imprisoned is a "mere gesture" and constitutionally inadequate. *Minor,* 228 F.3d at 358–59.

11. Govt. Supp. Briefing, Ex. 9.

12. Govt. Supp. Briefing, Ex. 10.

13. Govt. Supp. Briefing, Ex. 11.

14. Govt. Supp. Briefing, Ex. 11.

15. Govt. Supp. Briefing, Ex. 11.

16. Govt. Supp. Briefing, Ex. 15.

17. Govt. Supp. Briefing, Ex. 15.

18. Govt. Supp. Briefing, Ex. 15, 16.

19. Govt. Supp. Briefing, Ex. 16, 17.

forfeiture proceedings. It sent this notice to the following addresses:

(i) 911 Dartmouth Glen Way, Baltimore, Md. This is the address of Burman's mother, Shirley Burman. The corrective notice was returned unclaimed.[20]

(ii) Wicomico County Jail in Salisbury, Md. The corrective notice was returned unclaimed.[21]

An internal e-mail reveals that the DEA learned in September 2002 that Burman had been moved to the Central Virginia Regional Jail ("CVRJ") in Orange, Virginia. In October 2002, the DEA sent a copy of the third corrective notice to the CVRJ, where an individual named "Roy Lewis" signed for it on October 7, 2002.

Burman never filed a response. Accordingly, the motorcycle was administratively forfeited on May 8, 2003.[22]

### 2. Record Is Insufficient with Respect to the Motorcycle

■ As discussed above, the government is entitled to prevail if (i) the DEA made reasonable attempts to provide notice or (ii) Burman knew or had reason to know of the seizure within sufficient time to file a timely claim. 18 U.S.C. § 983(e).

It is clear that Burman knew of the seizure within sufficient time to file a timely claim, because he did, in fact, file a timely request for judicial forfeiture proceedings on February 6, 2002. The DEA rejected the request because it was not properly sworn, not because it was untimely.

This may not be the end of the inquiry, however. The government has not briefed two issues. First, whether the DEA was required to send Burman corrective notices (i) informing him that his request was defective, and (ii) giving him a grace period to cure the defect. Second, whether corrective notices are subject to the requirements of § 983(e).

If corrective notices are required and subject to § 983(e), then the record is incomplete. Burman did not respond to the notices issued on or after February 27, 2002. Moreover, the government has not shown that the corrective notices were "reasonably calculated" to reach Burman.[23] The corrective notice sent to Wicomico County Jail on May 2, 2002 was returned unclaimed. It was, therefore, inadequate. This leaves the corrective notice sent to CVRJ in September 2002. Someone named "Roy Lewis" signed for this notice, but the government has not shown that (i) Burman was incarcerated at CVRJ when the notice arrived, (ii) Roy Lewis was a prison employee, and (iii) CVRJ had in place adequate procedures to ensure that prisoners received their mail.

The government must supply the requested information before the Court can render a decision. Accordingly, the Court will RESERVE JUDGMENT on Burman's motion for the return of the motorcycle.

---

20. Govt. Supp. Briefing, Ex. 21.

21. Govt. Supp. Briefing, Ex. 20.

22. Govt. Supp. Briefing, Declaration of Douglas A. Cash.

23. To reiterate, when attempting to serve notice on an incarcerated person, the government must (i) send a certified letter, return receipt requested, to the facility where the prisoner is housed, (ii) show that a prison official signed for the letter, and (iii) provide evidence that the facility's mail procedures were "reasonably calculated" to ensure that prisoners would receive their mail. *Minor*, 228 F.3d at 358.

## B. Jewelry (Asset I.D. No. 01–DEA–393812)

### 1. History of Notices with Respect to the Jewelry

On July 20, 2001, the DEA sent a Notice of Forfeiture for the jewelry by certified mail, return receipt requested, to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas, where Burman resided prior to his arrest. Someone named "Edward Jones, Jr." signed for the Notice of Forfeiture on July 21, 2001.[24]

(ii) The Law Offices of Ronald Green, Esq. in Houston, Texas. Someone named "T. Anderson" signed for the Notice on July 23, 2001.[25]

(iii) The Federal Detention Center in Houston, Texas ("FDC–Houston"). A person whose name is illegible signed for the Notice on July 29, 2001, but several days later it was sent back to the DEA, stamped "return to sender."

On December 21, 2001, the DEA sent a second Notice of Forfeiture to the Maryland Correctional Adjustment Center ("MCAC") in Baltimore, Maryland. A person named "Tameka Sally" signed for it on December 26, 2001.[26]

On December 31, 2001, the DEA sent a copy of the first Notice of Forfeiture to the Law Offices of Thomas Saunders. On October 5, 2001, Saunders was appointed as Burman's trial counsel in Burman's criminal case on October 5, 2001. (Case No. L–01–115, D. Md., Docket No. 110). It is unclear whether anyone signed for the Notice of Forfeiture.[27]

Then, in a letter dated December 31, 2001 and received by the DEA on January 8, 2002, Burman stated that he wished to make a claim for his jewelry.[28] The DEA treated the letter as a timely request for judicial forfeiture proceedings, but rejected the request because it was not made under oath, subject to penalty of perjury, as required by 18 U.S.C. § 983(a)(2)(C)(iii).

On January 18, 2002, the DEA issued a corrective notice granting Burman 20 more days to file a timely request for judicial forfeiture proceedings. It sent the corrective notice to the following addresses:

(i) The Law Offices of Thomas Saunders. A person whose name is illegible signed for the corrective notice on January 25, 2002.[29]

(ii) 911 Dartmouth Glen Way, Baltimore, Md. This is the address of Burman's mother, Shirley Burman. Ms. Burman signed for the corrective notice on January 24, 2002.[30]

(iii) The Maryland Correctional Adjustment Center ("MCAC") in Baltimore, Maryland, which was the return address on Burman's December 31st letter. A person named "Tameka Sally" signed for the corrective notice on January 24, 2002.[31]

On February 6, 2002, within the 20–day window for correcting the defect, the DEA

---

**24.** Govt. Resp., Ex. 143.

**25.** In response to Notices of Forfeiture for other items, Green had already informed the DEA that he was no longer Burman's counsel and requested that correspondence be directed to the United States Marshal in Baltimore. (Govt.Supp.Briefing, Ex. 7).

**26.** Govt. Resp., Ex. 156.

**27.** Govt. Resp., Ex. 157.

**28.** Govt. Supp. Briefing, Ex. 9.

**29.** Govt. Supp. Briefing, Ex. 11.

**30.** Govt. Supp. Briefing, Ex. 11.

**31.** Govt. Supp. Briefing, Ex. 11.

received another letter from Burman stating that he wished to contest the forfeiture of the jewelry. Although the return address on the envelope was "The Law Offices of Thomas J. Saunders," Burman explained in his letter that Saunders was no longer representing him.[32]

The DEA treated the letter as a request for judicial forfeiture proceedings. In a corrective notice dated February 27, 2002, it denied the request because Burman had failed to sign and swear his statement under oath, subject to penalties of perjury, but gave Burman 20 days to cure the defect.[33] This notice was sent to Saunders's office, but the U.S. Postal Service returned the certified mail slip unsigned.[34]

On May 2, 2002, the DEA issued a third corrective notice, again giving Burman 20 days to file a proper request for judicial forfeiture proceedings. It sent this notice to the following:

(i) 911 Dartmouth Glen Way, Baltimore, Md. This is the address of Burman's mother, Shirley Burman. The corrective notice was returned unclaimed.[35]

(ii) Wicomico County Jail in Salisbury, Md. The corrective notice was returned unclaimed.[36]

On September 11, 2002, the DEA issued a fourth corrective notice granting Burman 20 more days to file a timely request for judicial forfeiture proceedings.[37] It sent the corrective notice to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas. The corrective notice was returned unclaimed.[38]

(ii) FDC–Houston. A person named "Stinebuck" signed for the corrective notice on September 23, 2002.

(iii) The Central Virginia Regional Jail ("CVRJ") in Orange, Virginia. A person named "Roy Lewis" signed for the corrective notice on October 7, 2002.[39]

Burman did not respond. Accordingly, on May 8, 2003, the DEA forfeited the jewelry.[40]

## 2. Record is Insufficient with Respect to the Jewelry

Burman knew of the seizure within sufficient time to file a timely claim. He filed two timely requests for judicial forfeiture proceedings on January 8, 2002 and February 6, 2002. The DEA rejected the requests because they were not properly sworn, not because they were untimely.

As discussed above, this may not end the inquiry. If corrective notices are required and subject to § 983(e), then the record is incomplete. Burman did not respond to the notices issued on or after February 27, 2002. Moreover, the government has not shown that the corrective notices were "reasonably calculated" to reach Burman in prison. Again, the corrective notice sent to Wicomico County Jail on May 2, 2002 was inadequate because it was returned unclaimed. This leaves the corrective notices sent to the FDC–Houston and CVRJ on September 11, 2002. Someone named "Stinebuck" signed for the notice at the FDC–Houston on September 23, 2002, and someone

---

32. Govt. Supp. Briefing, Ex. 15.

33. Govt. Supp. Briefing, Ex. 15, 16.

34. Govt. Supp. Briefing, Ex. 16, 17.

35. Govt. Supp. Briefing, Ex. 21.

36. Govt. Supp. Briefing, Ex. 20.

37. Govt. Resp., Ex. 159.

38. Govt. Resp., Ex. 160.

39. Govt. Resp., Ex. 161; Govt. Supp. Briefing, Ex. 22.

40. Govt. Resp., Ex. 162.

named "Roy Lewis" signed for the notice at CVRJ on October 7, 2002. The government has not shown, however, that (i) Burman was incarcerated at the FDC–Houston on September 23, 2002 or at CVRJ on October 7, 2002, (ii) Stinebuck and Roy Lewis were prison employees, and (iii) the FDC–Houston and CVRJ had in place adequate procedures to ensure that prisoners received their mail.

The government must supply the requested information before the Court can render a decision. Accordingly, the Court will RESERVE JUDGMENT on Burman's motion for the return of the jewelry.

### C. $15,000 in United States Currency (Asset I.D. No. 01–DEA–393660)

#### 1. History of Notices with Respect to the $15,000

On July 20, 2001, the DEA sent a Notice of Forfeiture for $15,000[41] by certified mail, return receipt requested, to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas, where Burman resided prior to his arrest. The Notice was returned unclaimed.[42]

(ii) The Law Offices of Ronald Green, Esq. in Houston, Texas. "T. Anderson" signed for the Notice.[43] On July 16, 2001, Green informed the DEA that he was no longer Burman's counsel and requested that

correspondence be directed to the United States Marshal in Baltimore.[44]

(iii) The Federal Detention Center in Houston, Texas ("FDC–Houston"). A person whose name is illegible signed for the Notice on July 12, 2001.[45]

On November 26, 2001, the DEA sent a second Notice of Forfeiture for the $15,000 to the following:

(i) The Maryland Correctional Adjustment Center ("MCAC") in Baltimore, Maryland. A person named "Karen Gardner" signed for it on November 29, 2001.[46]

(ii) The Law Offices of Thomas Saunders. The Notice was returned unclaimed.[47]

In a letter dated January 31, 2002 and received by the DEA on February 6, 2002, Burman stated that he wished to make a claim for the $15,000.[48] Although the return address on the envelope was "The Law Offices of Thomas J. Saunders," Burman explained in his letter that Saunders was no longer representing him.

The DEA treated the letter as a request for judicial forfeiture proceedings, but rejected it outright because it was untimely. The DEA did not give Burman another chance to request judicial forfeiture proceedings, as it did with the motorcycle and

---

**41.** In his motion, Burman seeks the return of $26,000 in United States currency, but provides no DEA identification number. The government has supplied an affidavit stating that DEA records do not reflect the seizure of $26,000 from Burman. (Docket No. 3, Ex. 4) The government acknowledges, however, that agents seized $21,000 from the house at 14407 Sequoia Bend: $6,000 from one safe and $15,000 from another. The Court will assume that this is the money to which Burman refers. In this section, the Court will address the $15,000. It will address the $6,000 in another section.

**42.** Govt. Supp. Briefing, Ex. 27.

**43.** Govt. Supp. Briefing, Ex. 29.

**44.** Govt. Supp. Briefing, Ex. 7.

**45.** Govt. Supp. Briefing, Ex. 31.

**46.** Govt. Supp. Briefing, Ex. 39.

**47.** Govt. Resp., Ex. 100–103; Govt. Supp. Briefing, Ex. 38–41.

**48.** Govt. Supp. Briefing, Ex. 42.

the jewelry. Instead, in a notice dated February 27, 2002 ("denial notice"), the DEA informed Burman that he had 20 days to file a petition for remission or mitigation. This notice was mailed to Saunders, but the U.S. Postal Service returned the certified mail slip unsigned.[49]

On May 8, 2003, the DEA apparently sent another copy of the denial notice to Burman at MCAC, where a person named "Theresa Williams" signed for it on May 13, 2003.[50] To date, the government has provided no evidence that it has completed forfeiture of the $15,000.

### 2. Record Is Incomplete with Respect to the $15,000

The record is incomplete with respect to the $15,000. First, the government has provided no evidence that the DEA issued a declaration of forfeiture for the $15,000. If the DEA never forfeited the $15,000, the Court lacks jurisdiction over Burman's claim.[51]

Second, the government has not shown that its Notices of Forfeiture met the requirements of § 983(e). It has provided no evidence that Burman knew or had reason to know of the seizure in time to file a timely claim.[52] Moreover, the government has not shown that the Notices of Forfeiture were "reasonably calculated" to reach Burman. Burman apparently was not at the FDC in Houston in July 2001, when the first Notice of Forfeiture was delivered.[53] This notice, therefore, was inadequate. This leaves the Notice of Forfeiture sent to MCAC on November 26, 2001 and signed for by "Karen Gardner." What is missing is evidence that (i) Burman was incarcerated in the MCAC when the Notice arrived, (ii) Karen Gardner was a prison official, and (iii) the mail procedures at the MCAC were adequate.

Finally, the government has not briefed two issues. First, whether the DEA was required to send Burman denial notices (i) informing him that his request for judicial forfeiture proceedings had been rejected, and (ii) advising him of his right to file for remission or mitigation. Second, whether denial notices are subject to the requirements of § 983(e). If denial notices are required and subject to § 983(e), then the record is incomplete.[54]

Accordingly, the Court will RESERVE JUDGMENT on Burman's motion regarding the $15,000. The government shall supplement the record with the requested information.

---

49. Govt. Supp. Briefing, Ex. 43.

50. Although it is unclear from what the government submitted, the DEA may also have resent the notice to Burman in Orange, Virginia in October 2002. The DEA identification number for the $15,000 appears on the certified mail receipt that was signed by an individual named Roy Lewis. Govt. Supp. Briefing, Ex. 22.

51. *See Ibarra,* 120 F.3d at 475–76.

52. Although Burman filed a claim on February 6, 2002, it was untimely.

53. Docket No. 15.

54. Burman did not respond to either of the denial notices. Further, the government has not shown that the denial notices were "reasonably calculated" to reach Burman in prison. The denial notice issued on February 27, 2002 was sent to Burman's attorney, Thomas Saunders. Under *Minor,* notice sent to an attorney is insufficient. This leaves the denial notice sent to MCAC on May 8, 2003. Although "Theresa Williams" signed for the notice, the government has not shown that (i) Burman was incarcerated at the FDC–Houston on May 13, 2003, when the notice arrived, (ii) Theresa Williams was a prison employee, and (iii) MCAC had in place adequate procedures to ensure that prisoners received their mail.

**D. $6,000 in United States Currency (Asset I.D. No. 01–DEA–393652)**

**1. History of Notices with Respect to the $6,000**

On July 20, 2001, the DEA sent a Notice of Forfeiture for $6,000 by certified mail, return receipt requested, to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas, where Burman resided prior to his arrest. The Notice was returned unclaimed.[55]

(ii) The Law Offices of Ronald Green, Esq. in Houston, Texas. Someone named "T. Anderson" signed for the Notice.[56] On July 16, 2001, Green informed the DEA that he was no longer Burman's counsel and requested that correspondence be directed to the United States Marshal in Baltimore.[57]

(iii) The Federal Detention Center in Houston, Texas ("FDC–Houston"). The Notice was returned unclaimed.[58]

On November 26, 2001, the DEA sent a new Notice of Forfeiture for the $6,000 to the following:

(i) The MCAC in Baltimore, Maryland, where a person named "Karen Gardner" signed for it on November 29, 2001.[59]

(ii) The Law Offices of Thomas Saunders. The Notice was returned unclaimed.[60]

On March 11, 2002, the DEA declared that the $6,000 had been forfeited.[61] Even so, it subsequently sent a new Notice of Forfeiture, dated May 15, 2002, to the following:

(i) Wicomico County Jail in Salisbury, Md. This Notice was returned unclaimed.

(ii) 911 Dartmouth Glenway in Baltimore, Md. Burman's mother, Shirley Burman, signed for it.

The DEA received correspondence about the $6,000 from Burman on or around June 21, 2002. The government has only provided a copy of the envelope, which lists the return address as Shirley Burman's residence. In any event, the DEA construed the correspondence as a request for judicial forfeiture proceedings, but rejected the request as untimely.

In a letter dated June 28, 2002, the DEA informed Burman that he had 20 days to file a petition for remission or mitigation. The letter was sent to Shirley Burman's address, where someone named Eric Johnson signed for it.[62]

On July 15, 2002, Burman requested remission of the administrative forfeiture.[63] In a letter dated October 22, 2002, the DEA denied Burman's request. The DEA mailed a notice to the FDC–Houston, but it was returned.[64] The DEA apparently re-sent the denial on May 8, 2003 to:

(i) Shirley Burman's address, where Eric Johnson signed for it.

(ii) The MCAC, where Theresa Williams signed for it.

55. Govt. Resp., Ex. 89.

56. Govt. Resp., Ex. 91.

57. Govt. Supp. Briefing, Ex. 7.

58. Govt. Resp., Ex. 93.

59. Govt. Resp., Ex. 103.

60. Govt. Resp., Ex. 101.

61. Govt. Resp., Ex. 104.

62. Govt. Resp., Ex. 110,111.

63. Govt. Resp., Ex. 112.

64. Govt. Resp., Ex. 113, 114.

## 2. Record is Insufficient with Respect to the $6,000

After the DEA finalized the forfeiture of the $6,000 on March 11, 2002, it continued to send Notices of Forfeiture to Burman and even entertained a request for remission. The government has not briefed whether the Court should limit its inquiry to the notice provided before the forfeiture, or whether the Court should also evaluate the notice sent after the forfeiture.

Even if the Court limits its inquiry to the notice provided before the forfeiture, the government must provide supplemental briefing. The government has provided no evidence that Burman knew of the pending forfeiture in enough time to file a timely claim. Moreover, the government has not shown that the Notices issued before the forfeiture were "reasonably calculated" to reach Burman in prison. Burman apparently was not at the FDC in Houston in July 2001, when the first Notice of Forfeiture was delivered.[65] This leaves the Notice of Forfeiture sent to MCAC on November 26, 2001 and signed for by "Karen Gardner." What is missing is evidence that (i) Burman was incarcerated in the MCAC when the letters arrived, (ii) Karen Gardner was a prison official, and (iii) the mail procedures at the MCAC were adequate.

The Court may also be required to consider the adequacy of the Notices sent after the property was forfeited. If it is, then the government must explain why it should prevail even though these Notices appear to have been inadequate.[66]

The government must supply the requested information before the Court can render a decision. Accordingly, the Court will RESERVE JUDGMENT on Burman's motion for the return of the $6,000.

## E. $824 in U.S. Currency (DEA Asset I.D. No 01–DEA–393676)

### 1. History of Notices with Respect to the $824

■ On July 9, 2001, the DEA sent written Notice of Forfeiture for $824 by certified mail, return receipt requested, to the following addresses:

(i) 14407 Sequoia Bend Boulevard, Houston, Texas, where Burman resided prior to his arrest. The Notice was returned unclaimed.[67]

(ii) The Law Offices of Ronald Green, Esq. in Houston, Texas. Green had at one time represented Burman in a criminal case. "Larry V. Green" signed for the Notice.[68] On July 16, 2001, Ronald Green informed the DEA that he was no longer Burman's counsel and requested that correspondence be directed to the United States Marshal in Baltimore.[69]

(iii) The Federal Detention Center in Houston, Texas ("FDC–Houston"). A person whose name is illegible signed for the Notice on July 17, 2001, but the Notice was stamped "Returned to Sender." [70]

---

65. Docket No. 15.

66. The Notice of Forfeiture sent to the Wicomico County Jail on May 15, 2002 was returned unclaimed. The second Notice, sent to Burman's mother, was also inadequate because the DEA was required to send notice to Burman in jail. The government has not otherwise shown that Burman knew of the seizure in time to file a timely claim. Although

Burman did file a claim on or around June 21, 2002, the DEA denied it as untimely.

67. Govt. Supp. Briefing, Ex. 46.

68. Govt. Supp. Briefing, Ex. 49.

69. Govt. Supp. Briefing, Ex. 7.

70. Govt. Supp. Briefing, Ex. 51.

On February 12, 2002, the DEA sent another Notice of Forfeiture to:

(i) The Maryland Correctional Adjustment Center ("MCAC"). The Notice was returned unclaimed.[71]

(ii) The Law Offices of Thomas Saunders. Saunders had been appointed as Burman's trial counsel in Burman's criminal case on October 5, 2001. Steven Spencer signed for the Notice on February 15, 2001.[72]

On May 17, 2002, the DEA sent a third Notice of Forfeiture, this time to

(i) 911 Dartmouth Glen Way, Baltimore, Md. This is the address of Burman's mother, Shirley Burman. The Notice was returned unclaimed.[73]

Wicomico County Jail in Salisbury, Md. The Notice was returned unclaimed.[74]

On August 2, 2002, the DEA sent a fourth Notice of Forfeiture to FDC–Houston. A person named "Stinebuck" signed for it on August 8, 2002, but the Notice was then stamped "Returned to Sender." [75]

On September 26, 2002, the DEA sent a fifth Notice of Forfeiture to the Central Virginia Regional Jail ("CVRJ") in Orange, Virginia. Someone wrote "Not Here" on the envelope and returned it to the DEA.[76]

On November 29, 2002, the DEA sent a sixth Notice of Forfeiture to the MCAC. The certified mail receipt was returned unsigned.[77]

On December 11, 2002, Burman, writing from the MCAC, challenged the forfeiture of the $824 and "all forfeiture property"; the claim was sworn, subject to penalties of perjury.[78] The DEA treated the letter as a request for judicial forfeiture proceedings for the $824 and referred the case to the United States Attorney for the District of Maryland. A letter informing Burman of the status of his claim was sent to the MCAC;[79] "Jessica Gandee" signed for it on January 27, 2003.[80]

On February 11, 2003, Assistant United States Attorney Christopher Romano drafted a letter offering to settle with Burman, but the government has provided no evidence that it ever sent the letter to him.

2. DEA Must Return the $824

Burman requested judicial forfeiture proceedings for the $824 in December 2002. The government had 90 days to file a complaint for forfeiture in federal district court or obtain a criminal indictment alleging that the property was subject to forfeiture.[81] It did not do so. The settlement offer does not qualify as a complaint. Accordingly, Burman's motion to set aside the forfeiture of the $824 is GRANTED.

IV. Conclusion

For the reasons stated herein, the Court will, by separate Order:

(i) VACATE the Order dated August 14, 2006;

---

71. Govt. Supp. Briefing, Ex. 53.

72. Govt. Supp. Briefing, Ex. 55.

73. Govt. Supp. Briefing, Ex. 57.

74. Govt. Supp. Briefing, Ex. 59.

75. Govt. Supp. Briefing, Ex. 61.

76. Govt. Supp. Briefing, Ex. 63.

77. Govt. Supp. Briefing, Ex. 64.

78. Govt. Supp. Briefing, Ex. 68.

79. Govt. Supp. Briefing, Ex. 67.

80. Govt. Supp. Briefing, Ex. 65.

81. 18 U.S.C. § 983(a)(3) The government "may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B).

(ii) GRANT Burman's motion to set aside the forfeiture of the $824;

(iii) RESERVE JUDGMENT on Burman's motion for the return of the:

(a) motorcycle,

(b) jewelry,

(c) $15,000, and

(d) $6,000.

No later than February 28, 2007, the government shall submit the requested evidence and briefing. Burman will have until March 14, 2007 to respond. Because of the age of this case, the Court will not extend these deadlines, which provide ample time for the parties to supply the necessary factual and legal authority; and

(iv) DIRECT the Clerk to MAIL a copy of this Order and the accompanying Memorandum to Burman.

## ORDER

Pending before this Court is Allah Burman's ("Burman") Motion for Return of Property. For the reasons stated in the Memorandum of even date, the Court hereby:

(i) VACATES the Order dated August 14, 2006;

(ii) GRANTS Burman's motion to set aside the forfeiture of the $824;

(iii) RESERVES JUDGMENT on Burman's motion for the return of the:

(a) motorcycle,

(b) jewelry,

(c) $15,000, and

(d) $6,000.

No later than February 28, 2007, the government shall submit the requested evidence and briefing. Burman will have until March 14, 2007 to respond. Because of the age of this case, the Court will not extend these deadlines, which provide ample time for the parties to supply the necessary factual and legal authority; and

(iv) DIRECTS the Clerk to MAIL a copy of this Order and the accompanying Memorandum to Burman.

It is so ORDERED.