24CA0097 Peo v Murphy 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0097
Jefferson County District Court No. 22CR2579
Honorable Christopher B. Rhamey, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kameron Murphy,

Defendant-Appellant.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Justin Conley, Deputy State
Public Defender, Golden, Colorado, for Defendant-Appellant

¶ 1    Defendant, Kameron Murphy, appeals the trial court's order finding that it didn't have jurisdiction to grant the release of his property in the custody of law enforcement due to an open homicide investigation and finding that the search warrant that the police used to seize his property hadn't dissipated after his criminal case had been resolved. Because we agree with Murphy that the court erred in concluding that it lacked jurisdiction to address his motion, we reverse the court's order and remand the case for further proceedings on the merits of Murphy's request.

## I.    Background

¶ 2    On September 15, 2022, police found N.C. deceased in her bathtub during a wellness check. Her boyfriend, Murphy, had called police to report that N.C. had been missing. Murphy told police he hadn't spoken to N.C. since September 2 or 3, and that he had last seen her at her apartment around that same time. Police couldn't find N.C.'s purse, her wallet, or her credit, bank, or identification cards. After police found N.C.'s body, Murphy admitted to police during a phone interview that he had found N.C. deceased in the bathroom of her apartment on September 13, and that he didn't call the police until two days later. In a subsequent

interview with police, Murphy admitted that when he found N.C.'s body he had turned on the shower, poured water on her body, and stolen her purse, wallet, phone, and computer.  Murphy also admitted that he had sent N.C.'s mother's boyfriend a video in which Murphy and N.C. were engaged in a sex act.  Murphy, however, denied harming N.C.

¶ 3    On September 16, 2022, police arrested Murphy; six days later he was charged with tampering with a deceased human body, posting a private image for harassment, concealing a death, and theft.  Pursuant to a search warrant issued on September 19, police seized Murphy's car as part of the investigation into N.C.'s death.

¶ 4    On June 20, 2023, Murphy pleaded guilty to posting a private image for harassment in exchange for the prosecution dismissing the other charges against him.  At that plea hearing, defense counsel verbally requested the return of Murphy's vehicle:

> MR. CONLEY:  And then additionally, Judge, Mr. Murphy is seeking the return, at the very least, of his vehicle.
>
> THE COURT:  And can the People arrange that?
>
> [THE PROSECUTOR]:  The People will have no objection to that —

THE COURT: All right.

[THE PROSECUTOR]: — and Mr. Murphy will just have to go to Lakewood [Police Department (P.D.)] and make the request. And I have no objection.

THE COURT: All right. If it requires a court order, the Court will issue that order.

¶ 5 Murphy was sentenced to time served based on the time he had spent in pretrial confinement. Due to a parole violation in another case, however, he remained incarcerated for four more months following the sentencing hearing.

¶ 6 Shortly after he was released from custody, Murphy went to the Lakewood P.D. and requested the return of his vehicle. The Lakewood P.D. refused to return the vehicle to Murphy. Based on this refusal, on October 23, 2023, just over four months after his plea hearing and sentencing, Murphy filed a written motion for the return of his personal property.

¶ 7     The City of Lakewood intervened in the case on behalf of the Lakewood P.D. in order to oppose the return of Murphy's property.[1] The City asserted that the court should deny Murphy's request for an order for return of his vehicle and other property because the Lakewood P.D. was still investigating N.C.'s death as a homicide and Murphy's vehicle was material to that ongoing investigation.

¶ 8     The trial court held two hearings on the issue of whether it had jurisdiction to order the Lakewood P.D. to return Murphy's property — one in November and one in December.  At the November hearing the court asked the City to submit a brief on two issues: (1) whether the court had jurisdiction over the return of Murphy's property as to the ongoing investigation; and (2) whether the September 19, 2022, search warrant was legally sufficient to

---

[1] Because it isn't challenged on appeal, we offer no opinion regarding the propriety of Lakewood's intervention in this case (or whether it should be permitted to continue to intervene in any proceedings on remand).  *See Galvan v. People*, 2020 CO 82, ¶ 45 ("Under our adversarial system of justice, we adhere to the party presentation principle, which relies on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised."); *see also People v. Ham*, 734 P.2d 623, 627 (Colo. 1987) (noting that third-party interventions in criminal cases should only be allowed under "truly exceptional circumstances").

justify continuing to hold Murphy's property as to the ongoing investigation.

¶ 9    The City argued in its brief that, though timely, Murphy's June 20 request hadn't been robust enough to establish that he owned the property and that police had seized it from him.

¶ 10   At the December hearing, the court entered a split ruling regarding its jurisdiction over Murphy's request.  The court found that it had ancillary jurisdiction over Murphy's request for the return of his property because he made a timely and sufficient request for it at the plea hearing.  Specifically, the court found that it "has jurisdiction . . . not only because it was already raised and ordered at the [plea] hearing, but also because we are within the appellate time frames."  But critical to this appeal, the trial court also found that its ancillary jurisdiction over the return of Murphy's property was limited to this criminal case and didn't extend to the ongoing homicide investigation.  In that regard, the court found as follows:

> The property is ordered released as to this case. . . .  The Court subsequently finds it doesn't have jurisdiction for the just total release of property as to separate investigations. . . .

> Ultimately, this item was seized through a lawful search warrant before the filing of this case as to a homicide investigation. . . .
>
> . . . I don't think the Court has the ability to go in and go after an unfiled investigation, or has jurisdiction to address an unfiled investigation with the Lakewood Police Department.

¶ 11    Because the court found it had limited ancillary jurisdiction to rule on the return of Murphy's property, the court didn't hold a hearing on the merits of Murphy's request or otherwise require the prosecution to oppose the return of Murphy's vehicle based on one of the grounds enumerated in *Woo v. El Paso County Sheriff's Office*, 2022 CO 56, ¶ 46.

## II.    Issues on Appeal

¶ 12    Murphy argues that the trial court erred by concluding that it didn't have ancillary jurisdiction to consider his request for the return of his property because such property may have also been being held in connection with an ongoing homicide investigation.

¶ 13    The People offer two responses.  First, they argue that Murphy's verbal request for the return of his vehicle during his sentencing hearing wasn't a proper motion because it didn't include any evidentiary support for his assertion that he owned the vehicle

6

and that the police had seized it.  Relatedly, the People argue that the trial court didn't have ancillary jurisdiction over the request because Murphy filed his written motion for return of his property four months after he was sentenced in the case — well after the window for appeal had closed.

¶ 14    Because they constitute a threshold issue, we address the People's arguments first and then turn to Murphy's challenge to the court's jurisdictional ruling.

### A.    Did the Trial Court Have Jurisdiction?

#### 1.    Standard of Review and Applicable Law

¶ 15    We review a challenge to a court's subject matter jurisdiction de novo.  *People v. Sandoval,* 2016 COA 57, ¶ 14.  A court has subject matter jurisdiction "where it has been empowered to entertain the type of case before it by the sovereign from which the court derives its authority."  *Id.* at ¶ 45 (quoting *Wood v. People,* 255 P.3d 1136, 1140 (Colo. 2011)).  Thus, any action a court takes without proper jurisdiction is a nullity.  *Strepka v. People,* 2021 CO 58, ¶ 13.

¶ 16    The general rule is that, once a criminal trial ends, the defendant's property should be returned to him.  *United States v.*

*Rodriguez-Aguirre*, 264 F.3d 1195, 1212 (10th Cir. 2001). But a court must have subject matter jurisdiction over a case in order to acquire ancillary jurisdiction over the issue of the return of property to a criminal defendant. *Woo*, ¶ 40. In order for a court to exercise ancillary jurisdiction over a defendant's request for return of lawfully seized property, the defendant must make such a motion while the court still has subject matter jurisdiction over the case. *Id.* at ¶ 42. As relevant here, a district court's subject matter jurisdiction over a case continues until the deadline to file a direct appeal passes, *id.*, which is forty-nine days after sentencing, C.A.R. 4(b)(1). Accordingly, where, as here, a defendant doesn't file a direct appeal, a defendant must make a motion for the return of lawfully seized property before the window for filing a direct appeal closes. *Woo*, ¶ 42.

¶ 17 Not only must the motion be timely, but it also needs to be substantively adequate. In such a motion the defendant must make a "prima facie showing that: (1) he owns or is otherwise entitled to possess the requested property and (2) the requested property was seized by law enforcement as part of his case." *Id.* at ¶ 45.

¶ 18     Once a defendant has moved for the return of his property, the prosecution may oppose that motion on any of the following five grounds:

> (1) the requested property is the fruit of illegal activity or is otherwise connected to criminal activity; (2) the defendant is not the owner of the requested property or a person entitled to possess it; (3) it would be unlawful for the defendant to possess the requested property; (4) the prosecution may need the requested property later, including after a direct appeal, during postconviction proceedings, or following an appeal from those proceedings; or (5) based on any relevant factors, including the type of case and the nature of the requested property, it would be inappropriate to grant the defendant's motion.

*Id.* at ¶ 46.

### 2.     Analysis

¶ 19     Pointing to the October 2023 written motion, the People argue that Murphy's request was untimely since it was filed after the forty-nine-day deadline to file a direct appeal had passed.  They further contend that Murphy's verbal request at the plea hearing was insufficient to make the required prima facie showing that he owned the vehicle and that police had seized it from him in this case.  We conclude that Murphy's verbal request was adequate to

9

trigger the court's ancillary jurisdiction, at least as it pertains to the request for return of his vehicle.[2]

### a. Murphy's Request Was Timely and Sufficient to Make the Prima Facie Showing

¶ 20    As they did below, the People contend that the trial court didn't acquire ancillary jurisdiction over Murphy's request for the return of his vehicle because Murphy didn't file a written motion until after the court had lost subject matter jurisdiction over the case. Relatedly, they contend that the request made at the sentencing hearing wasn't adequate because it wasn't in the form of a verified motion, which they argue *Woo* requires before a court's ancillary jurisdiction can be invoked. We disagree for two reasons.

¶ 21    First, neither *Woo* nor *People v. Buggs*, 631 P.2d 1200 (Colo. App. 1981) — the two cases the People rely upon — hold that a timely and adequate request for a return of lawfully seized property must be in the form of a verified motion. Instead, both note that a

---

[2] Murphy's request for the return of his property at his plea hearing only referenced his vehicle. Because this initial request was limited to his vehicle, and because the initial request was the only timely request made for the return of any of Murphy's property, to the extent that Murphy claims more than the return of his vehicle on appeal, that claim is untimely. Therefore, our analysis of his motion for the return of his property will be restricted to the vehicle.

10

verified motion is *sufficient* to meet the prima facie burden placed on defendants, not that it's *necessary*.  *See Woo*, ¶ 45 ("A verified motion asserting that law enforcement took the requested property from the defendant at the time of his arrest suffices."); *Buggs*, 631 P.2d at 1201 ("The issue here is whether a verified motion for return of seized property is sufficient to meet defendant's burden."). Indeed, the court in *Woo* emphasized the relative ease of invoking the court's jurisdiction, noting that "[m]aking a prima facie showing is not a rigorous task.  *Woo*, ¶ 45.

¶ 22     Second, the prosecution conceded the sufficiency of Murphy's showing during the sentencing hearing.  At the hearing, defense counsel told the court that "Mr. Murphy is seeking the *return*, at the very least, of *his* vehicle."  (Emphasis added.)  The prosecutor responded by stating, "The People will have no objection to that." To be sure, the prosecution could have objected to the sufficiency of counsel's showing, thereby forcing Murphy to produce *evidence* establishing that he owned the vehicle and that the police had seized it from him.  But the prosecutor didn't.  Having failed to oppose Murphy's request at the time it was made (when such opposition would have afforded an opportunity for any deficiency to

11

be cured), the People confessed at least the sufficiency of the prima facie showing.

¶ 23 Our conclusion in this regard is bolstered by the prosecution's and court's responses to Murphy's verbal request. Not only did the prosecutor not object to the request, but the prosecutor instructed Murphy to go to the Lakewood P.D. and request his vehicle — an implicit admission that the Lakewood P.D. had seized the car and a concession that it was his property.

¶ 24 Moreover, the court granted Murphy's request when it promised Murphy it would provide an order for the return of Murphy's vehicle in the event that was necessary. Accordingly, because Murphy's request was timely, unopposed, and granted by the court, we aren't persuaded by the People's arguments that the court didn't have subject matter jurisdiction at the time Murphy requested the return of his vehicle.

b. The Trial Court's Ancillary Jurisdiction Extended Over the Homicide Investigation

¶ 25 Having concluded that Murphy's verbal motion for the return of his vehicle was timely and sufficient to invoke the court's

ancillary jurisdiction over Murphy's request, we turn to the trial court's exercise of ancillary jurisdiction.

¶ 26    The trial court determined that its ancillary jurisdiction didn't extend to the homicide investigation after considering the four elements laid out in *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969), and applied by the division in *People v. Hargrave*, 179 P.3d 226, 230 (Colo. App. 2007), *abrogated in part on other grounds by Woo*, 2022 CO 56.[3]  Calling the *Marrow* factors the *Woo* factors, the trial court found as follows:

> So first, the Court's going to address
> jurisdiction, specifically ancillary

---

[3] Those four elements are:

> (1) the ancillary matter arises from the same transaction which was the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact-finding proceeding; (3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be settled to protect the integrity of the main proceeding or to insure that the disposition in the main proceeding will not be frustrated.

*Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969).

jurisdiction. . . . The Court finds that, as to [this case], the property was already ordered released, and the Court maintains that order. . . .

However, the Court does not have jurisdiction as [to] the return of property for a legally appropriate separate hold, apart from [this case].

Specifically, the analysis fails under the second, third, and fourth prong of jurisdiction in *Woo*; that is:

(2) the ancillary matter can be determined without substantial new factfinding proceedings. Here, we're talking about essentially a different case that's unfiled.

(3) determination of the ancillary matter through an ancillary order would not deprive a party of a substantial procedural or substantive right. Here, there is an issue for the Lakewood Police Department, as they're holding a piece of item [sic]. That item was to be returned. There's issue [sic] surrounding the search of that item, the proper hold of that item, and the collection of evidence.

And then: (4) that the ancillary matter must be settled to protect the integrity of the main proceedings or to insure that the disposition in the main proceedings will not be frustrated.

That one's split both ways. If we're considering this the main proceeding, then that falls in the way of the Defense. If we're considering a separate investigation to be the main issue, the main proceeding, as the Court has already ruled that in this case, everything should be

released, that certainly falls on the side of the Lakewood City attorney or police department.

¶ 27    By applying these factors to conclude that it lacked jurisdiction to consider the merits of Murphy's timely and facially adequate request for return of his lawfully seized property, the trial court erred. *See Woo*, ¶¶ 32-33. This is so because in *Woo*, when "endorsing" the four-part jurisdictional test from *Morrow* and *Hargrave*, the supreme court concluded that all four factors are deemed satisfied when a criminal defendant makes a sufficient and timely request for the return of his lawfully seized property:

> [W]e endorse *Hargrave*'s application of the four-part test articulated in *Morrow*. As we see it, *whenever a post-sentence motion for return of property is filed in a criminal case*: (1) the property in question will have been seized as part of the investigation giving rise to the charges; (2) the resolution of the motion will usually implicate straightforward, if not perfunctory, proceedings and will not require a substantial factfinding process; (3) litigation of the motion will not deprive any party of a substantial right because the parties necessary to the determination of the matter will be properly notified and will be afforded an opportunity to be heard; and (4) the matter will need to be resolved to protect the integrity of the main proceeding or to ensure that the disposition of the main proceeding won't be frustrated.

15

*Woo*, ¶ 33 (emphasis added).

¶ 28 In other words, the supreme court in *Woo* held that when a criminal defendant makes a timely prima facie showing, the four factors in *Morrow* are deemed satisfied. *See id.* at ¶¶ 32-33 ("[T]he property in question *will* have been seized . . . . [T]he resolution of the motion *will* usually implicate straightforward, if not perfunctory, proceedings . . . . [L]itigation of the motion *will not* deprive any party of a substantial right . . . . [And] the matter *will* need to be resolved . . . .") (emphasis added). To put a sharper point on it, *Woo* eliminated the need for a trial court to conduct the four-prong *Morrow* test. Thus, the trial court erred by hinging its jurisdictional analysis on whether the facts of this case satisfied the four-part test discussed in *Morrow* and *Hargrave*. Instead, the trial court should have concluded that it had ancillary jurisdiction over Murphy's request for the return of his vehicle and considered the request on the merits. To be sure, some of the facts that the court considered in assessing its jurisdiction may be relevant when it considers the merits of Murphy's request on remand. *See Woo*, ¶ 46 (setting forth the five grounds for denying a defendant's motion for lawfully sized property). But making some relevant findings in the jurisdictional

16

context isn't a substitute for resolving Murphy's motion on the merits. Instead, it must do so following the procedure set forth in *Woo*, ¶¶ 45-48.

### B. Did the Search Warrant Dissipate?

¶ 29    Because we have reversed the trial court's order on other grounds, we need not address whether the search warrant had dissipated. That is an issue that the trial court must consider in the first instance on remand.

### III. Disposition

¶ 30    The order is reversed. On remand, the trial court should exercise ancillary jurisdiction over Murphy's request for return of his vehicle that was lawfully seized pursuant to a warrant in this case and resolve the request on its merits. In doing so, "[i]n its discretion, the trial court may hold a hearing (evidentiary or non-evidentiary) before resolving [Murphy's] motion for return of [his] property." *Woo*, ¶ 48.

JUDGE GROVE and JUDGE JOHNSON concur.

17